BATE REFRIGERATING Co. *v.* GILLETT and others.

(*Circuit Court, D. New Jersey.* **August 9, 1887.**)

1. **PATENTS FOR INVENTIONS—VACATING AND REINSTATING INJUNCTION—EFFECT OF FOREIGN PATENT AND LITIGATION.**

   An injunction granted upon rendering an interlocutory decree for complainant, in a suit for infringement of a patent, was dissolved upon its being shown that there was a prior foreign patent for the same invention whose term had expired, and thereby terminated the life of the domestic patent, but such order of dissolution was afterwards vacated by the court by reason of the fact that a court of the foreign country had, since the making of such order, declared the foreign patent void *ab initio.* Such decree of the foreign court, declaring the foreign patent void, having afterwards been vacated by the same court on the ground that it was obtained by collusion, *held* that the order dissolving the injunction should now be reinstated.

2. **SAME—FOLLOWING FORMER DECISION IN CASE.**

   Upon a hearing on petition for such reinstatement before a judge other than the one who originally ordered the dissolution of the injunction, *held,* that the decision of the former judge, holding that the provision of Rev. St. U. S. § 4887, that "every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent," includes foreign patents granted pending the application for the domestic patent, should be followed, without considering the question *de novo;* the question being at least a doubtful one, and the former decision having been followed in other circuits.

3. **SAME—FOREIGN PATENT—TAKING EFFECT—TERM OF.**

   A Canadian patent takes effect from its date, although the delivery of it to the patentee is postponed on account of his neglect to file a model as re-

quired by law; and the term for which it is originally granted should. as affecting the continuance of an American patent afterwards granted for the same invention, be considered as its whole term, although it is subject to renewal, and is afterwards renewed.

4. SAME—LEGISLATION EXTENDING TERM OF FOREIGN PATENT.
An act of the Canadian legislature, passed after the issuance of a certain Canadian patent, extending the term of patents theretofore issued, and providing that such patents shall be deemed to have been originally issued for such increased term, can have no effect to extend the life of an American patent whose term is limited by the term of the Canadian patent.

5. SAME—FORFEITURE OF FOREIGN PATENT—EFFECT.
If a foreign patent is granted for a term certain, provided that, if the patentee shall not pay a stamp duty within a certain time, the patent shall cease and determine, an American patent, afterwards granted for the same invention, will not be affected by a forfeiture of the foreign patent, subsequently incurred by failure to perform the condition.

6. SAME—MISNOMER—LATE OBJECTION—IGNORANCE OF EXISTENCE OF PATENT.
Where, in a suit for infringement of a patent, the defendant was sued as a corporation under an erroneous corporate name, but appeared and answered under that name, without exception; participated in taking testimony; received notice of final hearing; instituted proceedings in another court under the same name; and, after a lapse of four years, sought to open the decree, and set aside all proceedings against it in the suit, because of the erroneous name and character under which it was sued, and because of surprise and ignorance of the existence of the patent: *held* that, under the circumstances, the defendant was estopped from denying the name and character in which it was sued; that ignorance of the existence of the patent was no defense; and four years was an unreasonable delay in seeking such relief.

On Petition to Dissolve Injunction, etc.

*John R. Bennett,* for the motion.

*Clarence A. Seward, John Lowell,* and *William M. Evarts, contra.*

BRADLEY, Justice. This case, having undergone some vicissitudes, requires to be briefly rehearsed.

On the twentieth day of November, 1877, letters patent of the United States, (No. 197,314,) for the term of 17 years, were granted and issued to John J. Bate, of Brooklyn, in the state of New York, for an improvement in processes for preserving meat during transportation and storage by enveloping the same in a covering of fibrous or woven material, and subjecting it to a continuous current of cold air, which patent was assigned to the complainant, the Bate Refrigerating Company. On the fifth day of February, 1878, the bill was filed in the present case, alleging infringement of the patent by the defendants, and praying for an injunction and account of profits. Answers were filed and put at issue, and proofs taken. On the fourteenth day of November, 1881, an interlocutory decree was made in favor of the complainant, adjudging that the patent was good and valid; that the defendants had infringed it; that the complainant recover profits and damages, with reference to a master for an account; and that a perpetual injunction be issued against the defendants, their officers and agents. Subsequently, in May, 1882, the defendants filed a petition praying for a dissolution of the injunction, alleging that they had recently discovered that, prior to the issue of the complainant's patent on which the suit was brought, to-wit, on the ninth day of January, 1877, letters patent of the dominion of Can-

ada were granted to the said John J. Bate for the same invention, for the term of five years, with a privilege of extending the same for two other terms of five years each; and that the first term of five years expired on the ninth day of January, 1882. The defendants contended, therefore, that by force of section 4887, Rev. St. U. S., the complainants' patent should have been limited to expire at the same time with the Canadian patent, and had no validity for a longer period. The language of section 4887 is that "every patent granted for an invention, which has been previously patented in a foreign country, shall be so limited as to expire at the same time with the foreign patent."

The complainant opposed the motion on three grounds: *First*, that the foreign patents referred to in the section are only such as have been granted prior to the application for the domestic patent, and not such as are granted between the application for, and the date of issuing, the patent; and as, in the present case, the application for the domestic patent was filed December 1, 1876, the Canadian patent could not affect it. *Second*, that although the Canadian patent was dated the ninth day of January, 1877, it was not delivered out to the patentee until the eighteenth of June, 1878, because no model was filed until then as required by law and by the patent-office. *Third*, that the extension of the Canadian patent, under the privilege given by the Canadian law, operated to make it a patent for fifteen years instead of five years.

Judge NIXON, who heard the motion, decided that neither of these grounds was sufficient to prevent the application of section 4887 to the domestic patent. He held that this section, different from the acts of 1836 and 1839, refers to foreign patents granted previously to the date of the American patent, and not merely to those granted previously to the filing of the application therefor. On the second point, he was equally decided that the invention was "patented" in Canada when the patent was signed and issued as a patent, ready for delivery. The delay of delivering it out to the patentee was entirely caused by his neglect to file a model, which he had the power to do at any time. The third point was also decided by Judge NIXON adversely to the complainant. He held that, as the patentee chose to take out his patent for five years only, relying on his privilege of extending it further if he should wish to do so, it necessarily resulted that, when thus taken out, it was a patent for five years only. As this was its *status* when the American patent was issued, the latter was limited to the same term. The opinion of Judge NIXON is reported in 13 Fed. Rep. 553. Entertaining the views therein expressed, he dissolved the injunction by an order dated September 29, 1882.

Thereupon, the complainant changed, for a time, the scene of operations to Canada. First was procured, on the twenty-fifth of May, 1883, an amendment of the patent law, by which it was declared that the term of every patent should be 15 years, with an option of paying the full fee, or only a part; and, if the unpaid part should not be paid, the patent should then expire. It was further declared that "every patent heretofore issued by the patent-office, in respect of which the fee re-

quired for the whole or for any unexpired portion of the term of fifteen years, has been duly paid according to the provisions of the now existing law in that behalf, has been and shall be deemed to have been issued for the term of fifteen years, subject, in case a partial fee only has been paid, to cease on the same conditions on which patents hereafter issued are to cease under the operation of this section." In addition to this legislation, the complainant, through its agents, procured the institution of proceedings, by *scire facias* in the superior court for Lower Canada, in the name of the attorney general of the Dominion, to have the Canadian patent vacated and declared void *ab initio* for want of a model filed in the patent-office before the granting of the patent. A decree to this effect was actually made by the court on the ninth day of July, 1883. Thus the complainant now had the benefit of a statute which declared that the Canadian patent was issued for a term of 15 years, and of a judicial decision which declared that it had never existed at all.

Armed with these documents the complainant applied to this court to vacate the order dissolving the injunction, and to have the injunction reinstated. Judge NIXON, before whom this motion also came, felt compelled to grant it, inasmuch as the Canadian patent, which was the ground of his previous decision, was now judicially declared to have never had an existence. No effect appears to have been given to the amendatory act of May 25, 1883. An order was made on the twenty-fifth of March, 1884, vacating the previous order dissolving the injunction, and reinstating the original order granting the injunction.

The defendants now followed the example of the complainant, and removed the conflict to Canada. According to the course and practice of the courts in that country, which are modeled very much upon the civil law, they applied for leave to litigate the proceedings on *scire facias* as third opponents; that is, as third persons having an interest affected by the judgment. The complainant and the other parties were notified of the application, and opposed it; but the court granted it, and allowed the defendants to interplead. They did so, and set up collusion between the principal parties in procuring the judgment which had been given, and contended that the Canadian patent was valid. The court sustained this defense, and declared that the former judgment had been arrived at "through the fraud to the law and collusion of the said John Jones Bate, Bate Refrigerating Company, and Benjamin Holman, deceiving the attorney general, the advocates, and the court, employing and paying counsel on both sides, as well seemingly against themselves as on their apparent behalf," and "that the deposit of a model of the invention to be patented is not, according to our law, a matter essential to the granting of the patent, but can be dispensed with at the discretion of the commissioner of patents; that the facts as they have occurred in this case—that is, preparing, drafting, and registering the patent before the model was deposited—would in themselves constitute a dispensation of model," etc.; and the court decreed that the patent of January 9, 1877, was legally issued, and had been legally renewed;

and, far from being null *ab initio*, had never ceased to be in full force and effect through the renewal of twelfth December, 1881, and as declared by the statute of 1883; and that the former judgment was null and void, and of no effect, to all legal intents and purposes, and especially as regards the said third opponents; and the court dismissed the suit on *scire facias*. This decree was pronounced on the thirtieth day of June, 1886.

The defendants, on the faith of this decree, now come before the court and ask that the order dissolving the injunction may be reinstated, and that the last order, vacating it, may itself be vacated.

It is clear that on the view of the law and of the case taken by Judge NIXON, in his previous rulings and decrees, the application of the defendants should be granted. As soon as the existence of the Canadian patent was judicially made known to him, he decided that the American patent terminated at the end of the five-years term of the Canadian patent, namely, on the ninth day of January, 1882, and he forthwith dissolved the injunction which had been ordered by the decree of September, 1881; and he only vacated that order of dissolution upon the exhibition of the decree made by the superior court of Lower Canada, July 9, 1883, declaring the Canada patent void *ab initio*. As that decree is now, by another decree of the same court, shown to have been collusive, and to have been obtained by fraud, and has been vacated, and as the said court has adjudged the patent to have been valid, it should follow, of course, upon Judge NIXON's view of the case, that the dissolution of the injunction should be restored.

But I am very urgently pressed, in the argument of the able counsel for the complainant, to revise the rulings of Judge NIXON, and to take up the case *ab integro*, both as to the construction of section 4887, Rev. St. U. S., in reference to the time when a foreign patent must have been granted in order to affect the term of an American patent, and as to the time when the Canadian patent took effect, so as to have any operation under our law; and, finally, as to the term of the Canadian patent,—whether it was for five years or fifteen years,—especially in view of the amendatory act of May 25, 1883.

I may say at once that I attach no importance to the last-mentioned act. The American patent received its operative force and effect on the day it was issued, and no subsequent legislation in Canada or elsewhere could change it, whatever might be the effect of such legislation where made. The force and effect of the American patent could only be affected by the Canadian patent as the latter stood when granted, and not as it was afterwards modified by legislation.

I may also say that I entirely agree with Judge NIXON in his view of the Canadian patent, that it took effect at its date, January 9, 1877, and not at the time of filing the model in 1878. It was granted on the ninth of January, 1877, after which time the patentee could take it out of the office whenever he chose to file the model. The term of the patent commenced to run at its date; and I agree with Judge NIXON that the term was for only five years, which expired in January, 1882, not-

withstanding the privilege which the patentee had of continuing it for a longer period.

With regard to the construction of our own statute, (section 4887, Rev. St.,) if the question were an open one, I might have some hesitation; but, as it is at least a question of considerable doubt, I feel constrained, sitting at the circuit, to follow the law of the case as held by Judge Nixon, especially as his judgment has been followed in other circuits. It is true that the complainant does not ask the reversal of any order heretofore made, on the ground of its being made on an incorrect view of the law; but asks that the last order may stand, notwithstanding the occurrence of facts which, according to the previous view of the law, would require its revocation. I do not see, however, that this makes much difference in the position of the court. In view of the Canadian patent, Judge Nixon dissolved the injunction. When it was put out of view, for a time, by certain rubbish, the injunction was revived. That rubbish has now been cleared away, and the patent comes again into view. Not to dissolve the injunction again would be to repudiate the former decision of the court. In any case, a judge will be very reluctant to decide the law differently from what has been previously been decided in the same case, either by himself or by another judge; although it has sometimes been done, especially for the purpose of conforming to the decision of an appellate court. But where no such decision has been made, and where the question, to say the least, is quite a doubtful one, it would be very unseemly for one judge to overrule the decisions of another in the same cause.

Therefore, without having come to any decided conclusion on the question in hand, considered as an original one, I feel bound to follow the previous rulings of this court, confirmed as they are by those of other circuit courts, as safe precedents, until the law shall be differently settled by the appellate tribunal. This, of course, will require a vacation of the order of March 25, 1884, and a reinstatement of that dissolving the injunction.

The defendants have presented an additional petition praying for a dissolution of the injunction, and an order to limit the period of accounting for profits, on the ground that a previous English patent was granted for the same invention on the twenty-ninth of January, 1877, for the term of 14 years; provided, that if the patentee should not pay the stamp duty of £50 within 3 years, or of £100 within 7 years, the said letters patent should cease and determine. The petition alleged that the patentee failed to pay the said stamp duty of £50 within 3 years, and that thereby the said patent became void on the twenty-ninth of January, 1880, and the defendants contend that the United States patent of the complainant did, by operation of law, cease and terminate at the same time. I do not think that this position is maintainable. The English patent was granted for a term of 14 years, subject to be defeated by the non-performance of a condition subsequent. I do not think that the American patent became subject to the same condition. The term of the English patent fixed the term of the American patent; nothing more,

nothing less. The subsequent fate of the English patent had no effect upon the American. The life of each after its inception proceeded independently of the life of the other. See *Protective Co.* v. *Burglar Alarm Co.*, 21 Fed. Rep. 458; *Paillard* v. *Bruno*, 38 O. G. 900, 29 Fed. Rep. 864.

A third petition in the case is that of the British and North American Royal Mail Steam-Packet Company, who allege that they are an unincorporated association of individuals heretofore doing business under that name, and that they are the same body of persons who were made defendants herein under the name of the "Cunard Steam-Ship Company." They pray for an order vacating, as to them under the latter name, the interlocutory decree of November 14, 1881, and for a discontinuance of the suit as to them, and that the name of the Cunard Steam-Ship Company may be stricken from the record in all further proceedings in the cause, and that they may be discharged from all further attendance, etc. The petitioners state, as grounds for relief, that the other defendants, Gillett, being exporters of fresh meat, had been accustomed to make shipments by the steam-ships of the Cunard Line, but that the petitioners, being merely common carriers, in the habit of transporting whatever merchandise was offered to their ships, received said shipments without being aware that the plaintiffs or John J. Bate had any patent of the kind set forth in the bill of complaint, or that it was claimed or pretended that said shipments were made in violation of any such patent; that although they were made defendants under the erroneous name of the "Cunard Steam-Ship Company," and appeared and answered as such, the other defendants were the principal parties, whose acts were charged as infringements; and the petitioners having no substantial interest in the matter, and being content to allow the plaintiffs and the other defendants to litigate their respective rights, substantially withdrew from all participation in the litigation after having introduced testimony to show their subordinate position, and the fact that they were themselves clear of any infringement; that the interlocutory decree against them was granted by inadvertence, and without any sufficient proof that the patented process was used on their ships; that it has since appeared, by the evidence of Benjamin W. Gillett before the master, that all shipments made by the Gilletts in ships of the Cunard Line prior to the commencement of this suit were made prior to the patent itself, and that none of them were made since that time.

In reference to this petition, it is to be observed—*First*, that the defendants, being sued as a corporation by the name of the Cunard Steam-Ship Company, answered under that name, without taking any exception to the manner in which they were sued, and thereby admitted their name and character to be such as the bill charged. Besides, in their petition to the superior court of Lower Canada to be admitted as third opponents in the *scire facias* case, a copy of which petition appears in the proceedings, they call themselves the "Cunard Steam-Ship Company, a body politic and corporate, having its chief place of business in the city of New York." It is plain that the decree cannot be opened on this

ground. The allegation that the defendants were ignorant of the existence of the patent is, of course, no defense. The patent was a public record, of which all persons were bound to take notice. As to the allegation that there was no sufficient proof of their infringement to sustain the decree against the Cunard Company, it is too late for a motion to open the decree on that ground. The defendants were served with process, they appeared, filed an answer, took part in the taking of testimony, and were duly notified of the final hearing. They have, therefore, not the least ground for alleging surprise, or that any advantage was taken of them. The general principle in relation to the time allowed for making a motion to correct or amend a decree is that the party must exercise due diligence, and make the motion in reasonable time. 2 Smith, Ch. Pr. 15, note; 2 Daniel, Ch. Pr. (3d Amer. Ed.) 1040, 1041. A lapse of more than four years is not reasonable time. A much shorter period has been held to be unreasonable. Id.

The petitioners may go before the master and show that they are not responsible for any profits or damages, and may, in that way, perhaps, get off with merely nominal damages; but it is too late to try the cause over again on the merits upon the issue that they are not liable at all. The prayer of the last-named petition is denied.