LAGO, Respondent, vs. WALSH and others, Appellants.

*January 11 — February 8, 1898.*

*Master and servant: Personal injuries: Pleading: Negligence: Contributory negligence: Instructions: Evidence: Fellow-servants:*

1. In an action for personal injuries received while stowing away sacks of bran in the hold of a vessel, the complaint — alleging in effect that at the time of the injury plaintiff was in the actual employment of defendant, in the performance of his duty at a place where it was necessary for him to be; that he notified his co-employees who were dumping the sacks into the hold to refrain from throwing down more sacks until he had piled up those already there; that it then became the duty of defendants and their

Lago vs. Walsh and others.

employees not to throw down more sacks until notified so to do; and that the defendants, contrary to their duty and without warning, wrongfully and negligently ordered their dumpers to throw down several sacks into the hold, while the plaintiff, not knowing that sacks were to be thrown down without warning, was working directly beneath the hatchway, whereby plaintiff was injured — is *held* to be sufficient and not to show affirmatively that plaintiff was guilty of contributory negligence.

2. Evidence to the effect that there was a standing rule that dumpers should give warning to those in the hold before dumping down any sacks; that plaintiff had told the dumper not to throw down any more sacks; that one of the defendants passed by, and seeing trucks loaded with sacks standing there inquired the cause, and was told of plaintiff's direction; that such defendant then looked into the hold and said with an oath, "Dump them sacks, dump. them down," and they were dumped accordingly, without warning, is *held* sufficient evidence to sustain a verdict finding negligence on the part of defendants.

3. The fact that the plaintiff heard the defendant's order to dump the sacks, and nevertheless continued working where they would be liable to strike him, is *held* not to render him guilty of contributory negligence as matter of law, in view of his previous direction to the dumper and the rule not to dump without warning, and of the equivocal language employed by the defendant. ·

4. An instruction that if the jury found the defendant intentionally ordered the dumper to dump instantly, without warning, when he had reason to think there might be men below in danger, such act constituted carelessness as a matter of law, and that plaintiff should recover unless they also found that he was guilty of contributory negligence, is *held* not to have been erroneous.

5. Nor was it error to instruct the jury that, in passing upon the question whether plaintiff would have escaped had he exercised ordinary care, they should take into consideration all the circumstances of the case,— " get into his shoes, so far as may be, when you pass upon his conduct; " and that carelessness meant "lack of ordinary care; that is, lack of such care as the man of ordinary care would exercise under the particular circumstances of the case," especially where followed by an instruction that defendant's order to dump acted as a revocation of the plaintiff's previous order to stop dumping, and imposed upon the plaintiff the duty of exercising reasonable diligence to get out of the way of the sacks so dumped; and that they should find for the defendants unless plaintiff exercised such reasonable diligence.

Testimony of a physician to the effect that the plaintiff's injured leg was more apt to suffer in the future from rheumatism than if it had not been injured was admissible to show the actual effect of the injury.

7. An employer is not relieved from liability for negligence causing an injury to an employee by the fact that the negligence of a fellow-servant also contributed to the injury.

8. Under sec. 4197, R. S. 1878, where the complaint expressly alleged that the defendants were copartners, a general denial did not put in issue the question of partnership.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

*A. T. Rock,* for the appellants.

For the respondent the cause was submitted on the brief of *O'Brien & Vaughn.*

CASSODAY, C. J.    This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff while in the employ of the defendants, assisting in loading a lake vessel with sacks of bran at the transfer dock of the Eastern Railway Company of Minnesota, at West Superior, between 9 and 10 o'clock on the evening of May 24, 1895. The cause being at issue and tried, the jury, at the close of the trial, returned a verdict in favor of the plaintiff, and assessed his damages at $168. From the judgment entered thereon the defendants bring this appeal.

There is evidence tending to prove that the contract of the company for the loading of the vessel was made in the name of the defendant *W. P. Walsh,* but that all the defendants who worked that day, known as the "ton gang," were to share the profits and losses of the business; that the boat at the time lay at the east side of the dock; that the method of loading the boat with the sacks or bags of bran, which would weigh 200 pounds each, was for the "truckers" to put two sacks on each truck at the warehouse or shed, and wheel them to the dock, and from thence to the hatchway

or opening in the upper deck, of the usual size (eight by ten feet); that to conveniently and more safely lower the bags from the deck through the hatchway of the boat into the hold below, a sufficient quantity of such bags were first arranged into a pyramid or bulkhead directly beneath the hatchway, and extending from the bottom floor in the hold upwards to a point about two feet below the opening of the hatchway, directly above; that this pyramid was about three feet larger each way at the bottom, and about two feet smaller each way at the top, than the opening of the hatchway; that there were two men (Cone and Griffin) employed and stationed by the defendants on the deck of the boat, one at either side of the hatchway, whose sole duties were to dump from the trucks all bags brought to their respective sides, down upon the bulkhead, alternately forward and aft, and before so dumping to warn the men below, working in the hold, by crying out, just before dumping, "Below forward," or "Below aft," as the case required; that on the night in question the plaintiff and one Michigan were directed by the foreman of the defendants to work in the hold of the boat at the aft corner on the water side of such slide or bulkhead, and there to stow away such bags as came down to that corner; that pursuant to such directions they entered upon their duties; that they were unable to keep the bags stowed away as rapidly as they came down to them; that the plaintiff left the hold, and ascended the bulkhead, and told one of the dumpers (Cone) to dump no more bags into the hold until he told him to, that they were working right under the hatch, and were in danger there; that Cone said, "All right;" that, according to their custom in doing such work, the dumpers were thereupon required to refrain from further dumping until notified by the men in the hold; that the plaintiff and Michigan thereupon depended upon Cone not to dump any more sacks until they told him to; that very soon after, the defendant *McGovern*

Lago vs. Walsh and others.

came on the deck of the boat, and said, "What is the matter with the trucks standing there?" that Cone replied that the men in the aft side had told him to hold the trucks; that *McGovern* looked down into the hold, and saw there was room for more sacks there, and then said to Cone: "Dump them sacks. Jesus Christ! dump them down;" that the plaintiff then went to grab another sack, thinking that Cone would not dump any more bags until he should tell him; that as he looked up the sack was coming, and that he just had time to save his head, and then the sack struck the bulkhead and the plaintiff's leg, and caused the injury complained of.

1. There is no good ground for holding the complaint insufficient, as contended. It alleges, in effect, that at the time of the injury the plaintiff was in the actual employment of the defendants, and in the performance of his duties at the place where it was necessary for him to be; that he notified the dumpers to refrain from throwing down more sacks until he had arranged and piled up those which had already been thrown down; that it then became the duty of the defendants and their other employees to so refrain from throwing down more sacks until warning should be given, in order to protect the plaintiff from injury; that the defendants, contrary to their duties and without warning, wrongfully and negligently ordered their dumpers to throw down several sacks into the hold while the plaintiff was working directly underneath the hatchway, and wholly ignorant that sacks were to be so thrown down without warning. The facts alleged in the complaint do not affirmatively show contributory negligence on the part of the plaintiff, as contended by counsel.

2. There was no error in holding that the evidence established the existence of a partnership between the several defendants, or at least that they were all engaged at the time in doing the work as principals. Besides, the complaint

alleges, in effect, that the defendants were at the time co-partners engaged in loading and unloading vessels, and such allegation is not "expressly denied" by the answer, nor by any affidavit made by or in behalf of the defendants, or any of them, and hence "such averments" of the complaint must "be taken to be true." Sec. 4197, R. S. 1878; *Martin v. Am. Exp. Co.* 19 Wis. 336; *Fisk v. Tank,* 12 Wis. 276. The mere general denial in the answer did not put the question of partnership in issue.

3. We cannot hold, as a matter of law, that the evidence is insufficient to support a finding of negligence on the part of the defendants. One of the principal questions submitted to the jury was whether the sacks at the time in question were dumped down by order of the defendant *McGovern,* or by the foreman of the defendants, and the verdict, in effect, finds that it was done by the order of *McGovern.* This took the question of co-employee out of the case. It appears that there was a standing rule that the dumpers should give warning to those in the hold of the vessel where the plaintiff at the time in question was at work, before dumping down any sack. The question submitted to the jury was whether the language used by *McGovern,* and quoted above, was properly understood as an order to dump instantly and without giving warning, or only to dump after giving the usual warning, and the jury found that it was the former. We think the evidence sustains the finding of the defendants' negligence.

4. True, it appears that the plaintiff, as well as the dumper, heard the order of *McGovern;* but the fact that the dumper had been requested by the plaintiff not to dump until informed that the sacks had been cleared away below, nor without warning, and had promised not to do so, together with the equivocal language employed by *McGovern,* would seem to justify the court in not taking from the jury the

question of the plaintiff's contributory negligence. True, the plaintiff could look up through the hatchway, but it was necessarily an awkward thing to do, down in the hold of the vessel, while moving and placing sacks weighing 200 pounds each; and, besides, it was between 9 and 10 o'clock at night. The verdict, to the effect that the plaintiff was free from contributory negligence, is sustained by the evidence.

5. Error is assigned because the court charged the jury: "If, however, you find that the order of *McGovern* meant dump at once, and he had reason to think there might be men at work below, in danger, I charge you that it was, as matter of law, carelessness, and your verdict will be for the plaintiff, unless you further find that plaintiff was himself careless in the premises, and that such carelessness on his part contributed to cause the accident. The burden is upon the plaintiff to prove by a preponderance of evidence that the order of *McGovern* meant dump instanter." Upon the conceded fact that the dumper, in pursuance of the order so given, did dump the sacks instantly and without warning, we find no error in this portion of the charge. If *Mc-Govern* intentionally ordered the dumper to dump instantly while the plaintiff was thus exposed to danger, then it was not only careless, as a matter of law, but reckless.

6. Error is assigned because the court, in charging the jury, said: "Had he exercised ordinary care, would he have escaped the injury? In passing upon this important question, you will take carefully into consideration all the circumstances of this case,— get into his shoes, so far as may be, *when you pass upon his conduct.* Carelessness, as used in these instructions, means lack of ordinary care; that is, lack of such care as the man of ordinary care would exercise under the particular circumstances of the case." True, the jury were thereby instructed to get into the plaintiff's shoes, as far as might be, *when passing upon his conduct;*

but we do not understand the instruction as fixing the plaintiff's conduct or his conception of duty as the standard of the care. On the contrary, the question under consideration was the exercise " of ordinary care," which was defined as "such care as the man of ordinary care would exercise under the particular circumstances of the case." We find no error in this instruction. Especially is this so since it was followed by an instruction, given at the request of the defendants, to the effect that *McGovern's* order to the dumper, so given and heard by the plaintiff, operated as a revocation of the plaintiff's previous order to stop dumping, and that "the duty was thereby imposed upon the plaintiff to exercise reasonable diligence to get out of the way of the sacks so dumped; and unless you further find that plaintiff did exercise such reasonable care and diligence as an ordinary, careful, prudent, and intelligent man would exercise under the circumstances, then your verdict should be for the defendant."

7. Nor do we think it was error for the court to give to the jury, at the request of the plaintiff, the following instruction: " If the jury should find from the evidence that the defendant *McGovern* ordered Cone, the dumper, to dump the sack of bran down into the hatch, and such order, under the circumstances, was negligence contributing approximately to cause plaintiff's injury, the fact, if you so find, that the negligence of Cone combined with such negligence of the defendant *McGovern* to produce the injury would not relieve the defendants from liability in this case." There are exceptions to other portions of the charge, but they are either too general or too inconsequential to call for consideration.

8. There was no error in admitting testimony of a physician to the effect that the plaintiff's injured leg was more apt to suffer in the future from rheumatism than though it had not been injured, as it tended to show the actual effect of

the injury. Besides, the amount of damages allowed shows that the jury were not misled by such testimony.

We find no reversible error in the record.

*By the Court.*— The judgment of the superior court of Douglas county is affirmed.