GEORGE O'BARR v. UNITED STATES.

No. 310.   Opinion Filed December 18, 1909.

(105 Pac. 988.)

1.   **COURTS—Territorial Courts—Subsequent Statehood.** Under an indictment for murder returned prior to statehood, the defendant should be tried and punished under the law as it existed at the time of the commission of the offense.

2    **HOMICIDE—Manslaughter—Elements—Statutes.** An instruction defining manslaughter under the United States statute (Rev. St. U. S. sec. 5341 [U. S. Comp. St. 1901, p. 3628]), in force in the Indian Territory prior to statehood which omits the word "willfully," is improper.

3.   **HOMICIDE—Manslaughter—"Willfully."** The word "willfully," as used in the United States statute defining manslaughter, is synonymous with "intentionally" or "designedly."

4.   **WEAPONS—Use—Case Required.** The law imposes upon persons handling deadly weapons the duty of exercising such care as an ordinarily cautious and prudent person would exercise under similar circumstances.

5.   **HOMICIDE—Criminal Negligence—Handling Weapons—Instructions.** The court in this case instructed the jury: "The law imposes upon people controlling or handling dangerous instruments or agencies the duty of exercising some care or caution in the manner of using the dangerous agency, and in case of gross or culpable neglect of this duty the law imposes criminal as well as civil liability." Held, error for the reason that it does not define the degree of care or caution to be used, or gross neglect, such as would render the defendant guilty of criminal negligence.

6.   **CONDUCT OF COUNSEL—Argument.** The defendant being on trial for murder, it was improper for the prosecuting attorney, in his closing argument, to make use of the statement: "It is your duty to punish this defendant, who by the means of whisky given the poor girl, weakened her will and dulled her senses, and has been her ruin."

(Syllabus by the Court.)

*Error from District Court, Le Flore County; Malcolm E. Rosser, Judge.*

George O'Barr was convicted of manslaughter on an indictment for murder, and he brings error.   Reversed.

*W. B. Buckley* and *Day & DuBois,* for plaintiff in error.—

On definition of manslaughter: Rev. St. U. S., sec. 5341; Wharton on Homicide, sec. 111, and cases cited; *Brown v. U. S.* (Ind. T.) 52 S. W. 56; *Territory v. Baca,* (N. Mex.) 71 Pac. 460, and cases cited; *Roberts v. U. S.,* 126 Fed. 897; *U. S. v. Meagher,* 37 Fed. 880. On improper argument of prosecuting attorney: *Dunmore v. State* (Ala.) 22 South. 541; *State v. Thompson,* (La.) 30 South. 895; *Long v. State,* (Miss.) 33 South. 224; *Attaway v. State,* (Tex.) 55 S. W. 45; *Gilbert v. Comw.* (Ky.) 51 S. W. 804; *People v. Valliere* (Cal.) 59 Pac. 295; *Roberson v. State,* (Ala.) 26 South. 645.

*Chas. West,* Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the United States.

OWEN, JUDGE. The proof on part of the state, in substance, is to the effect: That the defendant was a married man with a family of children. The deceased, who was a girl between 17 and 18 years of age, on the day of the shooting, met the defendant by appointment away from home, got into his buggy, and they were driving over the country at the time of the shooting. That defendant had, at different times during the day, given her whisky. That he had been in her company on the night before at a church house and had there given her whisky. She was found in his buggy on the roadside with a gunshot wound through her neck, and a short time thereafter died.

The evidence offered on part of the defendant was in perfect harmony with the evidence on part of the state, and, in addition thereto, was to the effect: That at the time of the shooting the girl was lying on his lap, with his hand under her neck; that his pistol had been lying on the seat of the buggy; that he and the deceased began playing with it, when it was accidentally discharged, the ball passing through the girl's neck and through his hand; that he immediately started for the doctor at the nearest town; but that before he reached there the tugs of his harness became unhitched; that he got out of the buggy to rehitch them, and, thinking the deceased was dead, left her in the buggy and

went to a mining camp, and there engaged one of the miners to take him to the county seat, where he surrendered to the officers.

Among the persons who first saw the girl on the roadside after she was wounded, was a deputy marshal, who testified that the girl told him the shooting was accidental, and that she did not wish the defendant to be in any way harmed for it. There is no evidence in the record which tends in the slightest degree to contradict the defendant's testimony that the shooting was accidental. The case seems to have been tried on the theory that the defendant was guilty of such degree of carelessness as would make the accidental killing criminal.

In the motion for new trial, counsel for the defendant assign 11 reasons for setting aside the verdict. We deem it unnecessary to consider all of them. The three upon which counsel seem to rely, and which are well taken, are as follows:

"Third. Because the court disdirected the jury in a matter of law, in this, to wit: 'Manslaughter is the unlawful killing of a human being without malice, express or implied, and without deliberation. It may occur upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible.' Fourth. Because the court misdirected the jury in a matter of law, in this, to wit: 'The law imposes upon people controlling or handling dangerous instruments or agencies the duty of exercising some care or caution in the manner of using the dangerous agency, and, in case of gross or culpable neglect of this duty, the law imposes criminal as well as civil liability.' Fifth. Because the court erred in its decision in a question of law, in this to wit: In permitting the attorney for the United States in his closing argument to use the following language over the objection and exception of the defendant: 'It is your duty to punish this defendant, who, by the means of whisky given the poor girl, weakened her will and dulled her senses, and has been her ruin.'"

The date of the commission of the alleged crime in this case was the 20th day of March, 1907, prior to statehood. The defendant was tried in April, 1908, after statehood. The case should have been tried under the law as it existed in the Indian

3· Cr.—21·

Territory at the time of the commission of the offense. *Sharp v. State, ante,* p. 24; 104 Pac. 71.

Act Cong. May 2, 1890, c. 182, 26 Stat. 96, which put the criminal laws of Arkansas into effect in the Indian Territory, contained the following proviso:

"That in all cases where the laws of the United States and said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to such offenses." (Section 33, Ind. T. Ann. St. 1899.)

At the time this act of Congress went into effect, the law of the United States defining murder and manslaughter and providing a punishment therefor was in full force and effect in Indian Territory. Therefore the offense committed in this case should have been tried and the punishment assessed under the laws of the United States. "Manslaughter," as defined by the United States statute (Rev. St. U. S. § 5341 [ U. S. Comp. St. 1901, p. 3628]), is as follows:

"Every person who unlawfully and wilfully, but without malice strikes, stabs, wounds, or shoots at, or otherwise injures another, of which striking, stabbing, wounding, shooting, or other injury such other person dies, is guilty of the crime of manslaughter."

The defendant was entitled to an instruction defining manslaughter as defined in this statute. The instruction of the trial court was:

"Manslaughter is the unlawful killing of a human being without malice, express or implied, and without deliberation."

It will be noted that this differs from the United States statute by omitting the word "wilfully." The word "wilfully," in the sense in which it is used in this statute, means not merely voluntarily, but with a bad purpose. It is a synonymous term with "intentionally," "designedly," "without lawful excuse"; that is, not accidentally. Thomp. on Tr. § 2209; *Com. v. Brooks,* 9 Gray (Mass.) 303; *Com. v. McLaughlin,* 105 Mass. 463; *Roberts v. U. S.,* 126 Fed. 897, 61 C. C. A. 427.

In the last-named case the United States Circuit Court of Appeals, in defining the word "wilfully," as used in section 5341,

Rev. St. U. S., the section under which this prosecution was had, said:

"In a penal statute the word 'wilful' means more than it does in common parlance. It means with evil intent or legal malice, or without reasonable ground for believing the act to be lawful." (Citing: *State v. Preston,* 34 Wis. 675; *State v. Clark,* 29 N. J. Law, 96; *Savage v. Tuller,* Brayton (Vt.) 223; *United States v. Three Railroad Cars,* 1 Abb. U. S. 196, Fed. Cas. No. 16,513; *Thomas v. State,* 14 Tex. App. 204; *Sam Lane v. State,* 16 Tex. App. 172.)

This court, in the case of *Thurman v. State,* 2 Okla. 718, 104 Pac. 67, defines the word "wilfully," citing *Harrison v. State,* 37 Ala. 154, and *Felton v. U. S.,* 96 U. S. 699, 24 L. Ed. 875, and quoting from *Felton v. United States,* as follows:

"Doing or omitting to do a thing, knowingly and wilfully, implies not only a knowledge of the thing, but a determination with a bad intent to do it or omit doing it. 'The word "wilfully,"' says Chief Justice Shaw, 'in the ordinary sense in which it is used in statutes, means not merely voluntarily, but with a bad purpose.' *Commonwealth v. Kneeland,* 20 Pick. (Mass.) 220. 'It is frequently understood,' says Bishop, 'as signifying an evil intent without justifiable excuse.'"

The instruction of the trial court, as quoted in the fourth assignment of error, did not state the law, for the reason that it fails to define the degree of care or caution to be used, or the failure to use such care as would constitute carelessness, and render the shooting criminal. The law imposes upon persons handling dangerous instruments, or deadly weapons, the duty of exercising ordinary care, or such care as an ordinarily prudent and cautious person would exercise under similar circumstances. Carlessness is the failure to use such care as an ordinarily prudent person would use under similar circumstances. Under the proof in this case, the only theory on which the jury could have found this defendant guilty of manslaughter was that the shooting was accidental.

If defendant's handling the pistol was with the same caution that an ordinarily prudent person would have used, under the same circumstances, the accidental shooting of the girl would not

make him guilty of manslaughter. On the other hand, although the shooting was accidental, yet done by defendant in the careless use or handling of the pistol, he would be guilty of manslaughter. This court said, in the case of *Tyner v. United States,* 2 Okla. Cr. 689, 103 Pac. 1057:

"If one fires a gun recklessly or heedlessly, he will not be excused; and his offense will be at least manslaughter, though the weapon was pointed in range of the deceased by accident, with no intention or design of killing the deceased. * * * 'The law infers guilty intention from reckless conduct, and, where the recklessness is of such a character as to justify this inference, it is the same as if the defendant had deliberately intended the act committed. When therefore one recklessly fires a pistol with criminal indifference as to the consequences, and another is killed, it is not necessary, in order to constitute this killing murder, that the accused should at the time of the firing have been engaged in the commission of some unlawful act, independent of and in addition to the reckless firing itself."

In the case of *Roberts v. United States, supra,* the court said:

"In the definition of 'manslaughter' contained in the statute, the killing must be done unlawfully and wilfully. The term 'unlawfully,' as here used, means without legal excuse. The term 'wilfully' here means done wrongfully, with evil intent. It means any act which a person of reasonable knowledge and ability must know to be contrary to duty, and, while the act must be done with evil design, and knowingly, as herein stated, still a killing which takes place under circumstances showing a reckless disregard for the life of another, and the reckless and negligent use of means reasonably calculated to take the life of another, such killing would be wilfully done, as the term is herein defined."

The instruction complained of informed the jury that, in case of gross or culpable neglect, the law imposed on the defendant a criminal liability, but left the jury to determine what would constitute gross neglect. What constituted carelessness and gross neglect should have been defined by the court. *York v. Com.,* 82 Ky. 360; *Flesh v. Lindsay,* 115 Mo. 1, 21 S. W. 907, 37 Am. St. Rep. 374; *Lago v. Walsh,* 98 Wis. 348, 74 N. W. 214; 1 Words & Phrases.

The language used by the attorney for the state in closing

the argument, as set out in the fifth assignment, was improper. The defendant in this case was charged with murder. He was not charged with having improper relations with the young girl, or with having seduced her, and there was no evidence offered proving any improper relation, or that the girl had been ruined. An argument along the line as indicated by this language was calculated to arouse the prejudice of the jury against the defendant. When this language is considered in connection with the lack of the evidence to disclose any motive for the killing, it cannot be ignored. Every one will admit that the conduct of the defendant in administering whisky to that young girl at the church house, giving her whisky at different times, meeting her by appointment, taking her into his buggy, and driving across the country, he being a married man with a family of children, was reprehensible; but however reprehensible such conduct, and however severely the same is to be condemned, the courts must not lose sight of the fact that the defendant is not on trial for that conduct. The sole charge for which the defendant was on trial here was the unlawful killing. When the evidence discloses such reprehensible conduct on the part of a defendant, such conduct as is calculated to arouse the prejudices of an ordinary juror against a defendant, the trial court should be all the more careful to confine the argument of attorneys to the material facts as proven. Every one must agree that the defendant deserves to be punished for such conduct; but that was not at issue in this case. There being no evidence that the defendant had caused the girl's ruin, or that the girl had in fact been guilty of improper conduct other than drinking whisky and driving in a buggy with a married man, there was nothing to warrant the statement of counsel. The statement amounted to his opinion, an officer of the court, that defendant should be convicted of the crime charged because of acts for which he was not on trial. The jury is sworn to try the case according to the law and evidence. They are not permitted to communicate with persons in or outside of the courtroom after they are selected as jurors for the reason that perchance they might learn the opinions of others as to the weight of

the evidence and be improperly influenced. The law throws around the jury every safeguard that the verdict may be the result of the sworn testimony alone. It is the province of attorneys in the argument, to apply the law to the facts as disclosed by the evidence, not to assert as facts things not in evidence. The argument is presumed to influence the jury: The law provides for argument. It is one of the most effective means of arriving at the truth. Why have any argument if the jury is not expected to be influenced by it? The state is given the closing of the argument because it has the burden of proof, and the argument is as much a part of the trial as the taking of testimony. It should be governed by the same rules of fairness, be confined to facts material to the issue, and based upon the competent testimony. We would not be understood as intending to abridge the power of prosecuting attorneys in arguing all the facts brought out in the testimony, but it is certainly error to argue facts which are not brought out. The state cannot convict a defendant of one crime by proving him guilty of another. This is true of the argument as well as the proof. It is extremely difficult to formulate rules by which to determine when the statement of counsel will justify the court in granting a new trial. It may be regarded as an established rule that it is error, sufficient to reverse a judgment, for counsel to state facts pertinent to the issue, calculated to prejudice the jury, and not in evidence, or to assume in argument that such facts are in the case, when they are not.

Many of the courts have announced a more rigid rule than this, and have even gone further in reversing cases on statements made by prosecuting officers than we would be willing to go. In this case we are following the rule of the more conservative courts.

In the case of *Dunmore v. State*, 115 Ala. 69, 22 South, 541, the Supreme Court of Alabama said:

"Counsel must not, in argument to the jury, state as a matter of fact that of which there is no evidence. Such statements are not within the latitude of discussion the law accords the counsel and is of itself of evil tendency."

In the case of *Tucker v. Henniker*, 41 N. H. 317, the court said:

"Every person against whom an accusation is made, or a suit is brought, is entitled to be tried by a jury and according to the laws of the land. This was the greatest of all privileges conferred by magna charta, and is guaranteed by our own fundamental law. This privilege is substantially violated, if counsel are permitted to state facts and comment upon them in argument against the adverse party, which are not before the jury by proofs regularly submitted. * * * An essential element in the trial by jury is that the verdict shall be rendered according to the facts of the case, legally produced before the jurors. * * * When counsel are permitted to state facts in argument, and to comment upon them, the usage of courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury denied. It may be said, in answer to these views, that the statements of counsel are not evidence, that the court is bound so to instruct the jury, and that they are sworn to render their verdict only according to evidence. All this is true, yet the necessary effect is to bring the statements of counsel to bear upon the verdict with more or less force, according to circumstances, and, if they in the slightest degree influence the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. If not evidence, then manifestly the jury have nothing to do with them, and the advocate has no right to make them."

In the case of *Brow v. State*, 103 Ind. 133, 2 N. E. 296, the prosecuting attorney said:

"I know personally the saloon keeper in this case, and he is guilty of this, and I am sure of other crimes."

This was held to be sufficient to justify reversal.

In the case of *Martin v. State*, 63 Miss. 505, 56 Am. Rep. 813, the prosecuting attorney said:

"Martin, the defendant, is a man of bad, dangerous, and desperate character; but I am not afraid to denounce the butcher boy, although I may, on returning to my home, find it in ashes over the heads of my defenseless wife and children."

The Supreme Court held that it was the duty of the presiding judge to interfere in such case of his own motion, and for his failure to do so gave the defendant a new trial.

The following excerpts are a fair sample of the rebukes administered to statements made by prosecuting attorneys, by courts following the more rigid rule. In *Perkins v. Burley,* 64 N. H. 524, 15 Atl. 21, counsel for the plaintiff in his closing argument, said:

"That if they (the jury) knew how the plaintiff and his father and brother were regarded in the vicinity in which they lived, he would be willing to submit the case without argument."

This was held to be sufficient ground for setting aside the verdict.

The case of *State v. Thompson,* 106, La. 362, 30 South. 895, is one where the defendant was convicted of murder and sentenced to death. The only error assigned was a statement by the prosecuting attorney in his closing argument, "I will say nothing to you of her six fatherless little children." There was no proof that the widow of the deceased had six children. The Supreme Court held this language was calculated to prejudice the jury against the defendant and reversed the case. The case of *Long v. State,* 81 Miss. 448, 33 South. 224, is one where the defendant was on trial for burglary. The evidence was to the effect the defendant entered the house of one Lawson at night. Lawson's daughter, a girl about 16 years old, was awakened by cold hands on her face, looked up, and saw the defendant standing by her bed. The district attorney, in his argument to the jury, made use of the following remarks:

"The defendant was in the house on the occasion when his offense was committed, not for the purpose of committing the crime which he is charged with alone, but for the purpose of committing another crime, one of the vilest known."

The Supreme Court of Mississippi held that this statement was calculated to inflame the jury and arouse their prejudices, and for this error reversed the case.

For the reasons mentioned, we do not believe the defendant in this case had a fair and impartial trial.

Therefore the judgment of the trial court is reversed, and

the cause is remanded, with directions to grant the defendant's motion for new trial.

FURMAN, Presiding Judge, and DOYLE, Judge, concur.