## DAVIS MILLER v. STATE.

No. A-1419.    Opinion Filed March 18, 1913.

(130 Pac. 813.)

1. HOMICIDE—Defenses—Intoxication. A request for an instruction, to the effect that the defendant should be acquitted if the jury should believe from the evidence that at the time the fatal blow was struck the defendant was too drunk to form a criminal intent, was rightly refused.

2. TRIAL—Instructions. Where the instructions requested, so far as legal and pertinent, were fully and fairly covered by the instructions given, the instructions requested were rightly refused.

3. TRIAL—Taking Indictment to Jury Room. A judgment will not be reversed because the jury were permitted to take to the jury room the indictment with the verdict of guilty, rendered at a former trial, indorsed thereon, where the attention of the court was not called to the fact until the jury returned their verdict, and where the affidavits of five jurors are to the effect that they did not see the verdict of the former trial on the indictment, and that this fact was not mentioned in the jury room during their deliberations, and that, so far as affiants know, no member of the jury noticed the verdict, or knew anything about it.

4. WORDS AND PHRASES—"Willfully." The word "willfully" is synonymous with "intentionally," "designedly," "without lawful excuse"—that is, not "accidentally."

(Syllabus by the Court.)

*Appeal from District Court, Le Flore County; Malcolm E. Rosser, Judge.*

Davis Miller was convicted of manslaughter, and appeals. Affirmed.

*C. E. Dudley,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *C. J. Davenport,* for the State.

DOYLE, J. The plaintiff in error was indicted in the United States Court in the Indian Territory for the Central District, at Antlers, for the murder of Sam Wright on August 18, 1906.

The case was pending in said court at the time of the admission of Oklahoma as a state, and was transferred by operation of law to the district court of Pushmataha county. His trial was there had, which resulted in a conviction of manslaughter, and the judgment was appealed to this court and reversed and remanded. *Miller v. State,* 3 Okla. Cr. 575, 107 Pac. 948.

When the case was again called for trial, a motion for a change of venue was made, and the same was granted and the case transferred to the district court of Le Flore county. The trial resulted in a verdict and conviction of manslaughter. April 14, 1911, in accordance with the verdict, the defendant was sentenced to be imprisoned in the state penitentiary for a term of 3 1-2 years, and to pay a fine of $300. An appeal was perfected by filing in this court, October 7, 1911, a petition in error with case-made.

Three alleged errors are relied upon as grounds for a reversal of the judgment of conviction. The first two are that the court erred in refusing to give two requested instructions, which read as follows:

"Gentlemen of the jury, if you find from the evidence that the defendant, Davis Miller, unlawfully and willfully, but without malice, struck the blow or blows which caused the death of the deceased, or, though he did not strike the fatal blow or blows himself, was present aiding and abetting the person or persons who did strike the fatal blow or blows, it will be your duty to convict of manslaughter, unless you should believe from the evidence that at the time the blow or blows were struck which resulted in the death of the deceased the defendant was in a state of intoxication, and was too drunk to form a criminal intent."

"Gentlemen of the jury, I have instructed you; every person who unlawfully and willfully, but without malice, strikes, stabs, wounds, or shoots at, or otherwise injures, another, of which striking, stabbing, wounding, shooting or other injury such other person dies, is guilty of manslaughter, and in this connection I charge you that the word 'wilfully' means not merely voluntarily, but with bad intent."

Upon this phase of the case the court instructed the jury as follows:

"(4) Every person who unlawfully and willfully, but without malice, strikes, stabs, wounds, or shoots at, or otherwise injures, another, of which striking, stabbing, wounding, shooting, or other injury such other person dies, is guilty of the crime of manslaughter.

"(5) The term 'willfully' means intentionally, designedly, or without lawful excuse. To make a person guilty of manslaughter, he must have willfully done the act which results in death, but it is not necessary that he should have intended to kill. If he willfully did the act which caused the death, a defendant would be guilty of manslaughter, whether he intended to kill or not.

"(6) Now, in this case, if you find from the evidence, beyond a reasonable doubt, that the defendant, Davis Miller, in what is now Pushmataha county and state of Oklahoma, at any time within three years next before the finding of the indictment in this case, unlawfully and willfully struck, wounded, or otherwise injured Sam Wright, from the effects of which striking, wounding, or injuring Sam Wright died, it will be your duty to convict the defendant of manslaughter."

It will be noted that the court followed the federal statutes in defining manslaughter, and the only complaint is that the court should have added these words:

"Unless you should believe from the evidence that at the time the blow or blows were struck which resulted in the death of the deceased the defendant was in a state of intoxication, and was too drunk to form a criminal intent."

At most, a state of intoxication rendering the defendant incapable of forming a criminal intent would only reduce murder to manslaughter.

In Wharton on Homicide (3d Ed.) p. 809, it is said:

"Homicide committed when the accused was so intoxicated that no intent to commit the crime of murder could have existed, however, not being murder in the first degree, is either manslaughter or murder in the second degree. Intoxication cannot operate as an entire exemption from criminal responsibility, and it is not conclusive against the existence of criminal

intent. At the utmost it only extenuates the crime from murder to manslaughter, and it does not do this as a matter of law."

In *Tucker v. United States,* 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112, the Supreme Court of the United States, in speaking of the action of the trial court in refusing requested instructions, said:

"This instruction was refused, because it had been covered by the instructions given. In those instructions the jury were distinctly told that if the defendant, at the time of the killing, although not insane, was in such a condition of mind, by reason of drunkenness, as to be incapable of forming a specific intent to kill, or to do the act that he did do, the grade of his crime would be reduced to manslaughter."

In *United States v. Meagher* (C. C.) 37 Fed. 875, loc. cit. 881, Judge Maxey discusses the question as follows:

"There is another point to which your attention is directed, and that is intoxication. There is evidence before you tending to show that at the time of the killing defendant was laboring somewhat under the influence of liquor. You are instructed that intoxication is no excuse for crime, but it may be considered to discover the specific intent which actuates a party in the commission of the offense, and thus it may sometimes reduce the offense of murder to manslaughter; and the rule is thus stated: 'Where the question of a specific intent is essential to the commission of a crime, * * * the fact that an offender was drunk when he did the act which, being coupled with that intention, would constitute the crime should be taken into account by the jury in deciding whether he had that intention.' But this excuse is to be received with great caution, and the question is left for the jury to determine 'whether the defendant's mental condition was such that he was capable of a specific intent to take life.'"

In 12 Cyc. 170 the responsibility of a person who has voluntarily become drunk is thus stated:

"It is a well-settled, general rule that voluntary drunkenness at the time a crime is committed is no defense. If a person voluntarily drinks and becomes intoxicated, and while in that condition commits an act which would be a crime if he were sober, he is fully responsible."

See, also, *Carney v. United States,* 7 Ind. T. 248, 104 S. W. 606.

The rule is settled that evidence of intoxication is admissible only as bearing upon malice or lack of malice; and since the defendant was convicted of manslaughter, wherein malice is not essential, there is no error. The court, in instructing the jury on manslaughter, followed the definition as it appears in section 5341, United States Comp. Statutes 1909, and also instructed the jury that "the term 'willfully' means intentionally, designedly, or without lawful excuse."

In the opinion in this case, first here on appeal, this court quoted from *O'Barr v. United States,* 3 Okla. Cr. 319, 105 Pac. 988, 139 Am. St. Rep. 959, as to the meaning of the word "willfully," as follows: "It is a synonymous term with 'intentionally,' 'designedly,' 'without lawful excuse'—that is, not accidentally."

We think the instructions given by the court fairly cover the case.

Second. Next, it is argued that the court erred in giving to the jury the original indictment, upon which was indorsed the verdict of the jury when the case was first tried. The recital in the case-made as to this is as follows:

"The indictment was given to the jury by the court with the instructions, and no one's attention was called to the fact that the verdict of a former jury was on the indictment. When the jury returned their verdict, it was discovered that the jury had the verdict of the former ·trial. The defendant then protested, and objected to the jury having had said indictment and verdict; said objection having been made as soon as the defendant discovered that the jury had been in possession of said verdict."

There is no attempt to show that the jury were influenced by this inadvertence. In fact, the affidavits of five of the jurors in the case are as follows:

"I was a member of the jury that tried Davis Miller in the case of the United States of America v. Davis Miller, and that I did not see the verdict of his former trial on the indictment, and did not know that he had ever been convicted of

the offense charged in the indictment. The verdict on the indictment was not mentioned in the jury room during the deliberation of the jury, and, so far as I know, no member of the jury saw the verdict on the indictment, or knew anything about it."

Counsel cite only one case (*Green v. State,* 38 Ark. 304), and that does not hold such action of the court is error. The third paragraph of the syllabus is as follows:

"It is better practice not to give to the jury in a criminal case, upon retirement, an indictment on which is indorsed a verdict of guilty at a former trial."

In *Lancaster v. State,* 36 Tex. Cr. R. 16, 21, 35 S. W. 165, loc. cit. 167, the Court of Criminal Appeals of Texas said:

"It is also urged that the case should be reversed, because the jury were permitted to take out, on the back of the indictment, a verdict of a former jury in the case, which, it was claimed, was legible; and in this connection a motion was made to have the original indictment sent to this court. We find an indictment with the record, but there is no certificate of the clerk to the same. An inspection of this indictment, however, does not indicate that such verdict, as claimed, is legible and can be read by the naked eye. Moreover, there is in the record the certificate of the judge to the same effect, and the affidavits of three of the jurors. Said affidavits go further, and show that, in their presence, the matter of a former verdict indorsed on the indictment was not discussed or mentioned by any of the jurors in their presence. We do not think there is anything in the appellant's contention."

The defendant did not produce any juror for the purpose of proving that the jury either saw, considered, or were influenced by the verdict returned in the first trial. The five jurors produced by the state swear that they did not see the verdict, did not know defendant had ever been convicted, and the verdict was not mentioned during the jury's deliberation. These facts bring the case clearly within the rule announced in the Texas cases.

In *State v. Tucker,* 75 Conn. 201, 52 Atl. 741, the court held:

"On a criminal prosecution in the court of common pleas, failure to remove the record of the judgment of conviction in the town court from the file given to the jury, or direct them not to regard it, was not prejudicial to the defendant, where no objection was made until after verdict."

In *State v. Shores,* 31 W. Va. 491, 7 S. E. 413, 13 Am. St. Rep. 875, it is said:

"Where three were jointly indicted for a felony, and one had been tried and convicted, and the verdict of 'guilty' was written on the indictment, and on the trial of another one of the three the said indictment was taken by the jury to their room, while they were considering their verdict, and the prisoner moved the court to send for the indictment and take it from the jury, and the court denied the motion, held no error."

In *Small v. State,* 105 Ga. 669, 675, 31 S. E. 571, loc. cit. 574, the Supreme Court of Georgia said:

"The question of practice to which the sixth headnote relates has been several times considered by this court. If a party desires a verdict rendered at a former trial concealed from inspection by the jury, he should present a request to this effect."

No prejudice is shown, and none will be presumed. The action of the court in giving the jury the original information with the former verdict thereon was through inadvertence.

This disposes of all questions presented. No error appears, and it seems to us the defendant had a fair and legal trial. It follows that the judgment should be affirmed.

The judgment of the district court of Le Flore county is therefore affirmed. Mandate forthwith.

ARMSTRONG, P. J., and FURMAN, J., concur.