431 F.2d 1029
 Nick IDZOJTIC and John Skocich
v.
The PENNSYLVANIA RAILROAD COMPANY, a corporation
v.
Edward KOZORA.
Nick Idzojtic, Appellant in No. 17,957
John Skocich, Appellant in No. 17,958.
 No. 17957.
 No. 17958.
 United States Court of Appeals, Third Circuit.
 Argued December 4, 1969.
 Decided September 10, 1970.
 
 Louis M. Tarasi, Jr., Conte, Courtney & Tarasi, Pittsburgh, Pa. (John Alan Conte, Pittsburgh, Pa., on the brief), for appellants.
 Aloysius F. Mahler, Pittsburgh, Pa., for appellee.
 Before GANEY, SEITZ and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 GANEY, Circuit Judge.
 
 
 1
 This case involves consolidated appeals of two plaintiffs from an order of the district court denying their motions for a new trial in an FELA action in which the jury found that the railroad was negligent but that its negligence played no part in causing the accident.[1] The railroad had brought Edward Kozora, an uninsured motorist, into the case as a third-party defendant. Plaintiffs did not amend the two-count complaint to include him as a defendant.[2] Their main point for reversal is that the trial judge committed error in his charge to the jury.
 
 
 2
 The facts giving rise to the accident and the injuries claimed by plaintiffs may be briefly stated as follows: At about 3:30 a. m. on the drizzly morning of January 25, 1964, plaintiff, Nick Idzojtic and John Skocich, were returning to the Conway Yards after they had replaced a derailed gondola car on the tracks at the railroad's Allegheny Yards in Pittsburgh, Pa. They were riding side by side in the front seat of an open-bed stake-body Ford truck being used as a wreck truck and owned by the railroad. It was being operated by another railroad employee, Paul Peter Fishovitz, and was proceeding northwardly at the rate of about 35 miles per hour in the right-hand lane of the Ohio River Boulevard (Route 65), a four-lane concrete paved highway, in the vicinity of Baden, Pa. The area was without overhead lights and the road was straight and level. A car being driven by James J. Gameos had been following the truck in the right-hand lane and moved into the left lane to pass it. While Gameos was still in the left lane, two to three car lengths behind the truck, a car being driven by Kozora, third-party defendant, in the right lane passed him on his right and crashed into the wrecking truck in the right lane. The wrecking truck pulled up on the berm east of the northbound right lane approximately 150 feet beyond the point of impact with its right taillights smashed and the right mud flap missing. The plaintiff, Idzojtic, testified that after the impact the left taillight was burning.
 
 
 3
 Kozora, called as a witness by plaintiffs, testified that immediately prior to the collision he was traveling 30-35 miles per hour with his low-beam headlights on in the left lane and a car in front of him was spraying water on his windshield and he steered into the right lane to pass that car. He explained that his windshield wipers were not doing such a good job on the "mud" splashing up from the car ahead and was leaving more or less of a smear on his windshield. When he passed that car Kozora "could see very good" in returning to the right lane to permit, as he said, a car behind him to pass. While he was proceeding in the right lane at the speed of 40 to 45 miles per hour, he did not see any car on his left nor anything within the range of his headlights, and then almost immediately he struck the rear of the wrecking truck. He said prior to the collision he never saw the truck or its rear lights.[3]
 
 
 4
 Plaintiffs testified that there were two impacts, and they were thrown backward by the first, as a result of the truck being struck in the rear, and then forward by the second which they claimed was caused by the forward shifting of the heavy materials and tools, such as 500 pound airjacks, wooden blocking and wedges, cables, sledge hammers, picks, shovels and crow bars, in the bed of the truck. Idzojtic stated also that after the second impact or jolt the right cab door came open and he held on to the top of the window frame while the truck slowed down but was thrown out of the cab before the truck came to a stop.
 
 
 5
 Fishovitz, the driver of the car, called as a witness on behalf of the railroad, agreed that there was an initial impact but did not notice another one. He stated that the impact caused the truck to lurch forward suddenly, "seemed like it increased speed all of a sudden for a second."
 
 
 6
 At the trial plaintiffs maintained that the railroad was negligent in operating a vehicle on the highway which was defective in the following particulars: (1) The right front door was without a window glass which required them to cover the opening with a sheet of cardboard material; (2) Tools and materials were loaded in its bed without being secured; (3) The heater was not functioning; (4) The right rear mud flap was missing, and (5) The rear taillights were not burning or were invisible.[4] The railroad did not contradict the fact that it was aware that the door glass window was missing or that some of the tools and materials being carried in the bed of the truck were not secured. It did dispute the other particulars and offered evidence to show that the heater was working and that the right rear taillight was smashed and the right rear mud flap was torn off as a result of the collision.
 
 
 7
 The trial court submitted six special interrogatories to the jury.[5] He charged the jury, regarding the first two, as follows, in part:
 
 
 8
 "Your answers to these questions will constitute your verdict in this case.
 
 
 9
 "1. Did the plaintiffs prove by a fair preponderance of the evidence that the defendant Railroad was negligent?
 
 
 10
 "Now, you answer that question yes or no.
 
 
 11
 "Only if you answer it yes, answer question 2.
 
 
 12
 "2. Did the plaintiff prove by a fair preponderance of the evidence that the Railroad's negligence caused the accident in whole or in part?
 
 
 13
 "You answer that yes or no.
 
 
 14
 "Only if your answer to question 2 is yes, you answer the remaining questions. If you should answer question 2 no, your labors are over. You answer no more questions. You should return your verdict to the Court." (Emphasis supplied.)
 
 Then followed this portion of the charge:
 
 15
 "Now, the Federal Employers Liability Act provides, in its pertinent part, as follows:
 
 
 16
 "Every common carrier by railroad, while engaging in commerce between the several states shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce.
 
 
 17
 "That is for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its equipment.
 
 
 18
 "There is no doubt about it that this truck was part of the railroad's equipment. Under the law, in order to find the defendant railroad liable in damages to these plaintiffs, you must find from the evidence that the railroad's truck was defective, due to its negligence, in that its taillights were not functioning, and that this negligence of the railroad, in whole or in part, caused the accident and the injuries to the plaintiffs.
 
 
 19
 "If you find that the taillights on the railroad's truck were defective and were not illuminated at the time of the accident, due to the railroad's negligence, then you would answer the first question yes.
 
 
 20
 "Then if you find from the evidence that this negligence played any part, even the slightest, in causing the accident and the injuries to the plaintiffs, then you would answer question 2 yes.
 
 
 21
 "Also, under the evidence, if you believe that plaintiffs, you could find that the railroad was negligent in failing to replace glass in the window space in the right-hand door, in failing to have mud flaps at the rear of the rear wheel, and in permitting tools, material and so forth, to lie loose and unsecured in the bed of the truck, and perhaps in failing to have a functioning heater.
 
 
 22
 "The railroad denied negligence in the above respects except it was admitted that it had no glass in the window space on the right side.
 
 
 23
 "But even if you believe the plaintiffs and answer the first question yes, there is no evidence that the absent window or the absent mud flaps or the failure to secure tools and materials, or the malfunctioning heater played and part in causing this accident, and your answer to question 2 would be no."
 
 
 24
 However, it is to be noted that the second question made reference to the accident only and said nothing concerning injuries. Proper exception was taken by the plaintiffs to this charge. This confusion of "accident" and "injuries" and repeated reference to "accident" alone and the use of the word "accident" in the second question submitted to the jury plus the elimination of all alleged negligence except the question of whether the taillights were lit and visible within a range of 500 feet as provided in § 801(d) of the Pennsylvania Motor Vehicle Code, 75 P.S., in our judgment, is reversible error. Section 1 of the FELA[6] does not speak of "accident" but only of "injuries" and while under certain circumstances, the substitution of one for the other may be of no consequence, here it is crucial. For example, if there were no other factors present here than that the Kozora car struck the wrecking truck of the defendant due to the negligence of the defendant railroad company having no rear lights on the truck which were lit or which were invisible by reason of dirt and mud covering them, and if there was proof that it caused the injuries in whole or in part, then the use of the word "accident", while not in strict compliance with the statute, would not have been harmful error. However, here there was direct evidence by the plaintiffs with respect to the tools in the bed of the truck and since the jury found under interrogatory No. 1 that there was negligence on the part of the defendant, we cannot rule out the unsecured tools as an act of negligence. Here there was testimony by the plaintiff that at the time of the crash the occupants of the front seat, including the plaintiffs and the driver, Fishovitz, were thrown backward and immediately a second jar caused by the shifting tools, unsecured in the body of the truck, resulted in the plaintiffs being thrown forward so hard that one of the plaintiffs, Skocich, lost several teeth when his head struck the windshield in front of him. Dr. Willison testified that this second snap was a contributing factor to the plaintiff's injuries. Accordingly, while the tools being thrown backward by the crash and immediately coming forward causing the second jar to the plaintiffs was not a cause of the accident, on the record before us it was a contributing cause to their injuries or at least a jury might have so found, and the elimination from the jury of consideration of these facts, in our judgment, constituted reversible error.
 
 
 25
 Additionally, the question of whether the right rear mud flap which was missing after the accident caused the taillights of the truck to be splattered with mud rendering the lights invisible was, in our judgment, a factor for jury consideration in that it may have found that the railroad violated § 801(d) of the Pennsylvania Motor Vehicle Code,[7] and this violation may have been found by it to have been a cause, in whole or in part, of the injuries. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).
 
 
 26
 The plaintiffs contend, additionally, that the words "in the slightest degree" should have been added to Interrogatory No. 1 so that it would have read: "Did the plaintiffs prove by a fair preponderance of the evidence that the defendant Railroad was negligent in the slightest degree?", citing Rogers v. Missouri Pacific Railroad, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). However, the trial judge did not err in so refusing, since this Court has stated that the "Rogers case decide not decide how a judge should instruct a jury in such cases." See Ely v. Reading Co., 424 F.2d 758 (decided April 1, 1970). A trial judge complies with the Rogers test by submitting the case to the jury and not thereafter improperly restricting the jury in their findings either as to employer negligence or whether it played any part in producing the injuries for which damages are sought. Interrogatory No. 1 per se did not restrict the jury in its findings as to negligence.
 
 
 27
 Plaintiffs have made no attempt to demonstrate how an inoperative heater was a cause or aggravation of their injuries except to say that it was cold on the morning of January 25, 1964. They offered no evidence as to what the temperature was at that time. We know that it was above the freezing point and that the plaintiffs wore clothes appropriate for that time of year. We fail to see how the jury, with reason, could have found that this alleged particular defect contributed to their injuries in any wise.
 
 
 28
 The section of the window on the right side of the wrecking truck which was next to where the plaintiff, Idzojtic, sat was missing and in order to keep the cold and rain from coming in, he inserted a long piece of cardboard in the width between the top of the door and the frame of the window and when the door was shut and Idzojtic held it down with his hands, it prevented some of the cold and rain from entering the truck. The right outside rear-view mirror was so set that only a person sitting in the driver's seat could look to the right rear. With the mirror adjusted to this position, it was of no value to other occupants of the front seat concerning the view to the rear and so the plaintiffs were in no position to alert the driver of a vehicle approaching from the rear. However, the testimony showed that after Kozora had crashed into the wrecking truck the truck pulled over to the berm on the right-hand side of the road and the door swung open and Idzojtic and Skocich, the plaintiffs, were thrown out on the berm. While there was also testimony that Skocich and Idzojtic got out of the truck after it had stopped and were not thrown out, as they testified, it was nevertheless, in our judgment, a question for the jury to decide whether this negligence, the substitution of a piece of cardboard for the window pane, was on the part of the railroad not a negligent act which was a contributing cause to the plaintiffs' injuries even if not a cause of the accident. In our judgment, this should have been placed before the jury for their consideration.
 
 
 29
 Finally, the appellants contend that the court should have instructed the jury with respect to an emergency situation which they alleged was here involved. We see no merit to this contention in that there was no testimony with respect to an emergency situation created as Kozora testified he saw nothing ahead of him and was proceeding 40-50 miles per hour when he crashed into the truck.
 
 
 30
 The judgment of the lower court will be reversed and a new trial will be granted.
 
 
 
 Notes:
 
 
 [1]
 Apparently, the opinion of the district court has not been made available for publication
 
 
 [2]
 It is highly probable that there was lack of diversity between appellants and the third-party defendant, a layman who acted as his own lawyer in this action
 
 
 [3]
 Edward Kozora did not sue the Pennsylvania Railroad Company for the injuries he sustained or damages to his automobile as a result of the accident
 
 
 [4]
 According to plaintiff's pretrial narrative-statement the negligence of the railroad consisted (a) of operating a truck at an extremely slow rate of speed on the highway at night (this ground was abandoned at trial), and (b) in failing to maintain visible rear, brake and tail lights on the truck. At the pretrial conference plaintiffs' attorney said: "We contend that the lights of the truck on the rear and other operative mechanisms of the truck were not functioning properly. Consequently, anyone following the truck in the rear was unable to see it." He also stated, in response to the railroad's request that he explain what the other defective operative mechanisms were, "As I understand, the window on the righthand side where the passenger was was completely out. There was a cardboard there. While they were traveling, he had to be holding this cardboard for the window." No further explanation was given by him
 
 
 [5]
 Interrogatories Nos. 3 to 6 inclusive were as follows:
 "3. Did the Railroad prove by a fair preponderance of the evidence that Edward Kozora was negligent?
 "Answer `Yes' or `No':
 "[Only if your answer to Question 3 is Yes, answer Question 4.]
 "4. Did the Railroad prove by a fair preponderance of the evidence that the negligence of Edward Kozora was a proximate cause of the accident?
 "Answer `Yes' or `No':
 "[Only if your answer to Question 2 is Yes, answer Questions 5 and 6.]
 "5. What sum of money do you award to Nick Idzojtic to compensate him for the damages he sustained as a result of the accident?
 $ ________
 "6. What sum of money do you award to John Skocich to compensate him for the damages he sustained as a result of the accident?
 $ ________"
 
 
 [6]
 This section, in pertinent part, provides: "Every common carrier by railroad while engaged in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in while or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cases * * * or other equipment." (45 U.S.C. § 51)
 
 
 [7]
 Section 801(d) of the Pa. Motor Vehicle Code, 75 P.S. § 801(d), provided in part: "(d)Rear lamps and illumination of rear registration plate. — Every motor vehicle * * * shall carry at the rear at least two (2) lamps of a type which at the time of their use is approved by the secretary, and which exhibit a red light, plainly visible under normal atmospheric conditions from a distance of five hundred (500) feet to the rear of such vehicle. Such rear lamps or a separate lamp shall be so constructed and placed that the number plate carried on the rear of such vehicle shall, under like conditions, be so illuminated by a white light as to be read from a distance of fifty (50) feet to the rear of such vehicle. * * *"
 
 
 
 31
 SEITZ, Circuit Judge (concurring).
 
 
 32
 While I concur in Judge Ganey's opinion, I think it appropriate to answer the railroad's argument that certain claims of negligence were not raised in the pleadings or at pre-trial and thus should not be considered on appeal.
 
 
 33
 The district court's charge read in part as follows:
 
 
 34
 "If you find that the tail lights on the railroad's truck were defective and were not illuminated at the time of the accident, due to the railroad's negligence, then you would answer the first question yes."
 
 
 35
 * * * * * *
 
 
 36
 "Also, under the evidence, if you believe that plaintiffs, you could find that the railroad was negligent in failing to replace glass in the window space in the right-hand door, in failing to have mud flaps at the rear of the rear wheel, and in permitting tools, material and so forth, to lie loose and unsecured in the bed of the truck, and perhaps in failing to have a functioning heater."
 
 
 37
 After thus identifying plaintiffs' claims for negligence the district court stated that the railroad denied any negligence. Nowhere in the transcript of the trial or the proceedings incident to the submission of the case to the jury does it appear that the railroad objected on the ground that any of the above described issues was not properly before the court. Thus, despite a more limited statement of the issues appearing in the pre-trial order, I am satisfied that the issues identified by the district court in its charge were tried by implied consent of the parties. In this circumstance Fed.R. Civ.P. 15(b) requires that "they shall be treated in all respects as if they had been raised in the pleadings." The salutary court decisions enforcing pre-trial statements defining the issues to be tried are, in my view, inapplicable to situations embraced by Rule 15(b).
 
 
 38
 Given my view that the various claims of negligence were properly before the district court the next issue is whether the court correctly disposed of them.
 
 
 39
 I agree that it was error for the district court to employ the word "accident" rather than "injuries" in several places in his charge and in the special interrogatories to the jury. Although plaintiffs' points for charge used the correct terminology, it may be argued that plaintiffs' counsel did not comply with Fed.R.Civ.P. 51 because he failed to state distinctly his objection to the use of "accident" rather than "injuries" and thus this defect may not be assigned as error on appeal. In any case, I think a new trial is nevertheless required. I say this because the district court gave binding instructions to the jury on all the negligence issues tried except that covering the defective tail light.[1] Although the evidence on proximate cause on some of the issues is exceedingly sparse, I am satisfied that the issues tried had a legally cognizable basis under Pennsylvania negligence law and that there was ample evidence to go to the jury on all issues except that concerning the defective heater. It was, therefore, error for the district court not to grant plaintiffs' motion for a new trial. I further assume that before such trial the pleadings will be amended in accordance with Rule 15.
 
 
 
 Notes:
 
 
 [1]
 "* * * there is no evidence that the absent window or the absent mud flaps or the failure to secure tools and materials, or the malfunctioning heater played any part in causing this accident."
 
 
 
 40
 ALDISERT, Circuit Judge (dissenting).
 
 
 41
 I would affirm the judgment of the district court.
 
 
 42
 The facts of this car-truck, rear-end collision are not complicated. Edward Kozora drove his car on a public highway into the rear of the railroad's truck, in which the two railroad employee appellants were passengers. Appellants did not sue Kozora. Instead, they brought FELA actions, alleging that the railroad was negligent for failing to equip the truck with proper tail lights. Kozora, brought into the case as a third party defendant, put in a pro se defense.
 
 
 43
 At the pre-trial conference appellants' counsel expressed their contention as follows: "* * * we contend that the lights of the truck in the rear end and other operative mechanisms of the truck were not functioning properly." When pressed for more specifics, he said that "other operating mechanisms that were defective" consisted of the use of cardboard instead of glass in the window of the door on the right (passenger's) side. Trial was had, and at the close of testimony the jury was asked to make special findings: whether appellants proved that the railroad was negligent and, if so, whether the negligence caused the "accident" in whole or in part. The jury found that the railroad was negligent but that its negligence was not the proximate cause of the "accident."
 
 
 44
 I find none of appellants' arguments to be persuasive. Although the trial court did not meticulously adhere to the statutory language of FELA, 45 U.S.C. § 51, the word "injuries" was often used in conjunction with the word "accident" in the charge. For the trial error to be prejudicial and therefore reversible,[1] it must be demonstrated that the error was capable of confusing and thereby misleading the jury as to the correct guide for their deliberations. Thus, if the words have the capacity to mislead, then, ordinarily, it may be concluded that the language in fact did so.
 
 
 45
 But an examination of the complete record here indicates that although this language may have had the capacity to confuse, it did not do so; it did not cause the jury to stray from the test imposed by the statute. While deliberating, the jury addressed a question of their own to the court:
 
 
 46
 If we answer question 1, yes, declaring that the Railroad was negligent in concerning the injuries and if we answer question 2, no, can we still answer questions 5 and 6? (Emphasis supplied.)
 
 
 47
 After colloquy with counsel, the court responded to the jury's question, using the words, "negligent in concerning the injuries." (Emphasis supplied.)
 
 
 48
 Faced with this record, clearly disclosing the jury's precise understanding of the court's charge, I fail to see how appellants can be considered the victim of improper instructions of the trial court. The exact language of the jury in their question to the court — "negligent in concerning the injuries" — should dispel any notion that the jurors were confused by improper instructions.
 
 
 49
 Nor do I agree that it was fundamental error for the court to remove from the jury the theory of negligence based on the presence of loose tools in the truck bed. This cause of action being neither pleaded nor raised at pre-trial,[2] its only legitimate role comes from the suggestion that it qualifies by "implied consent of the parties," Fed.R.Civ.Pro. 15(b), because appellee did not object to its being submitted to the jury as an issue. The short answer to this is that the appellee was not required to object because the court itself removed it from the jury's consideration, obviating the necessity of any action on the appellee's part. Moreover, appellants' requested instruction No. 10, assigning the loose tool argument as a ground for negligence, was specifically denied by the court; thus making unnecessary another record objection.
 
 
 50
 For there to be implied consent to an unpleaded issue, there must first be an issue. Where the court refuses to entertain a concept proffered by one litigant, the silence of the other litigant who has profited by the court's action should not be deemed an implied consent to its abortive introduction. Implicit in the concept of implied consent is an acquiescence, a passive or tacit acceptance of what someone else has proposed. Where that proposal is not present, there can be no acceptance, no acquiescence, and no implied consent.
 
 
 51
 Accordingly, I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 Especially here, where the "clear error test" must be applied. An examination of the record does not convince me that proper exception was made at trial
 
 
 [2]
 In Wounick v. Hysmith, 423 F.2d 873 at page 874 (3 Cir. 1970), we said:
 * * * We note, however, that there was no allegation in the complaint nor at pre-trial that the damaging fumes emanated from a defective engine. Under these circumstances, permitting the assertion of this new position at trial "would impair the efficacy of the pretrial conference procedure and would have been manifestly unfair" to the defense. Wiggins v. City of Philadelphia, 331 F.2d 521, 526 (3 Cir. 1964). See also Tromza v. Tecumseh Products Co., 378 F.2d 601 (3 Cir. 1967).