299 So.2d 695

**Mary E. SALOTTI, as Adm'x of the Estate of Joseph Salotti, Deceased,**

v.

**The SEABOARD COAST LINE RAILROAD CO., a corp.**

**SC 520.**

Supreme Court of Alabama.

Aug. 22, 1974.

Rehearing Denied Sept. 19, 1974.

Hare, Wynn, Newell & Newton, Birmingham, DeParcq, Anderson, Perl, Hunegs & Schwebel, Minneapolis, Minn., for appellant.

L. Vastine Stabler, Jr., and W. Stancil
Starnes, Birmingham, for appellee.

COLEMAN, Justice.

Plaintiff appeals from judgment for defendant, based on verdict of a jury, in an action under the Federal Employers' Liability Act, Title 45, § 51 et seq., U.S.Code.

Plaintiff sued as administratrix of the estate of her husband, Joseph Salotti, deceased. Plaintiff alleges that on September 17, 1970, defendant was a common carrier operating a railroad in interstate commerce; that on said date plaintiff's intestate was employed by defendant as a carman; that while engaged in his work as employee of defendant at Hamlet, North Carolina, on said date, plaintiff's intestate was caused to suffer a coronary attack and died; that plaintiff's intestate was fatally injured as the result in whole or in part of negligence of the officers, agents, or employees of defendant in failing or neglecting to provide intestate with a reasonably safe place to work, or neglecting to provide an adequate number of employees to do the work, or negligently assigning deceased to work under conditions that were too dangerous when defendant knew or should have known that assigning deceased to work under those conditions would impose unreasonable and dangerous risks.

Defendant pleaded in short by consent the general issue with leave, etc. The defenses presented were the general issue and contributory negligence.

The evidence tends to show that plaintiff's intestate was sixty-four years old at time of death and had worked for the railroad thirty years. He suffered a heart attack in February, 1968. After recovery he returned to work. On February 27, 1970, he was admitted to North Carolina Memorial Hospital in Chapel Hill, North Carolina, suffering from congestive heart failure. He was discharged from the hospital on May 8, 1970. He was certified for light work and returned to work.

On the morning of September 17, 1970, plaintiff's intestate went to work at 7:30. At about 8:00 o'clock, he was working on the wheels at one end of a railroad car and was tightening a bolt. Two other workers of the three-men crew were working at the other end of the same car. Intestate called to one of the other two men and shortly thereafter was found lying in a prone position. He died about this time. His death certificate recites that the immediate cause of death was "Myocardial Infarction" due to or as a consequence of "Arterio-Sclerotic Ht. Disease."

The case was submitted to the jury who returned a verdict for defendant. The errors asserted by plaintiff will be considered in the order in which they are argued in brief.

*Part 1.*

Assignment of error No. 4 recites:

"4. The trial court erred in refusing the plaintiff's written Charge 3:

"'Plaintiff's Requested Charge No. 3

"'Section 4 of the Federal Employers' Liability Act (45 U.S.C.A. § 54 provides, in part, that:

"In any action brought against any common carrier * * * to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *."'' (R. 8)"

■ An action under Federal Employers Liability Act for injury or death of employees of a railroad engaged in interstate commerce is governed by federal court decisions. 45 U.S.C.A. § 51 et seq. L. & N. R. Co. v. Green, 255 Ala. 642, 53 So.2d 358.

In support of Assignment 4 plaintiff cites Bayles v. L. & N. R. Co., 272 Ala. 188, 129 So.2d 679, and Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610.

In *Bayles*, this court held that the trial court erred in sustaining demurrer to Count B of plaintiff's amended complaint. Defendant argued that it would have been entitled to the affirmative charge as to Count B and, therefore, that sustaining demurrer to Count B was harmless error. This court held that the affirmative charge for defendant is properly given in FELA cases only when there is a complete absence of probative facts to support plaintiff's claim of negligence on the part of the railroad; that such complete absence of probative facts to support Count B did not exist in *Bayles*; and, therefore, that sustaining demurrer to Count B was not harmless error. The judgment for defendant was reversed.

No requested charge similar to plaintiff's Charge 3 in the instant case was considered by this court in *Bayles,* and *Bayles* is not pertinent to the question whether the trial court erred in refusing plaintiff's Charge 3 in the instant case.

In *Tiller,* the trial court granted defendant's motion for a directed verdict on the grounds (a) that the evidence disclosed no actionable negligence and (b) that the cause of death was speculative and conjectural. The Circuit Court of Appeals, interpreting the decision of the district court as resting on a conclusion that the evidence showed no negligence, affirmed. The Supreme Court of the United States concluded that the question of negligence on the part of the railroad and on the part of the employee should have been submitted to the jury and reversed the judgment.

In *Tiller,* no charge similar to plaintiff's Charge 3 in the instant case was considered. In the instant case, the question of negligence was submitted to the jury.

In Dilley v. Chesapeake & Ohio Ry. Co., 6 Cir., 327 F.2d 249, the court considered an FELA case in which defendant pleaded contributory negligence but did not plead assumption of risk. In the instant case, defendant presented the defense of the general issue and contributory negligence but not assumption of risk. In *Dilley,* plaintiff undertook to inject assumption of risk into the trial of the case. The U. S. Court of Appeals said:

"Since a new trial must be granted we think it appropriate to comment briefly on the charge given the jury on assumption of risk. After all the evidence was in the defendant, anticipating the plaintiff would argue that the defense offered by the defendant was the defense of assumption of risk and that such a defense was not available under the statute, objected to the doctrine of assumption of risk being referred to either in instructions or in plaintiff's argument. The objections were overruled and the plaintiff in her argument defined assumption of risk and, as anticipated, stated to the jury that the defense offered was nothing but the defense of assumption of risk and by specific legislative enactment (53 Statutes 1404; 45 U. S.C. § 54) such a defense was not available to the defendant. The defendant in argument responded that assumption of risk was not in the case and was not its defense. The court in instructing the jury charged on assumption of risk by quoting the pertinent portion of Section 4, of the Act, without further explanation of the doctrine. The defendant urges that the effect of the plaintiff's

argument and the charge was to inform the jury that assumption of risk was in the case, since the plaintiff so argued and the court charged on it, and that it was no defense; also that the jury was unjustifiably forced to engage in the puzzling venture of distinguishing between assumption of risk and contributory negligence. The defendant pleaded contributory negligence in this case and did not plead assumption of risk. A correct instruction on contributory negligence permitting the jury to consider the actions of plaintiff's decedent in the light of a dangerous condition known to him is proper and it is not necessary for the court to instruct on assumption of risk. Gowins v. Pennsylvania R. R., 299 F.2d 431 (6th Cir. 1962). In Tiller v. Atlantic Coast Line R. R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943), it was held 'that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment * * *.' and in his concurring opinion Justice Frankfurter states, 'Because of its ambiguity the phrase "assumption of risk" is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded.' In view of these expressions, when it is necessary to distinguish between assumption of risk and contributory negligence the instructions should carefully and fully make the distinction. However, where the jury as in this case has been presented with no evidence and has heard nothing from any witness or pleading with respect to the doctrine of assumption of risk until the doctrine was defined and its application to the facts of the case debated in final arguments of counsel and thereafter merely mentioned in court instructions it is believed that it would have been the better practice to have eliminated any reference to the doctrine. See Seaboldt v. Pennsylvania R. R., 290 F.2d 296 (3rd Cir. 1961); DePascale v. Pennsylvania R. R., 180 F. 2d 825, 827 (3rd Cir. 1950); Texas and Pacific Ry. Co. v. Buckles, 232 F.2d 257 (5th Cir. 1956), cert. denied, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498; Koshorek v. Pennsylvania R. R., 318 F.2d 364 (3rd Cir. 1963)." (327 F.2d at 253, 254)

In Clark v. Pennsylvania Railroad Co., 2 Cir., 328 F.2d 591, on an appeal by plaintiff the court affirmed judgment for defendant. The court held that the trial court did not err in refusing a requested charge on assumption of risk. Among other things the court said:

"On the merits, however, there was no occasion for the giving of any instruction whatever on the subject of assumption of risk. . . ." (328 F.2d at 595)

In Ellis v. Union Pac. R. Co., 148 Neb. 515, 27 N.W.2d 921, in reversing a judgment for plaintiff, the court said:

"It was argued by defendant that the trial court erred in giving any instruction upon the doctrine of assumption of risk and that in doing so, it also erroneously stated the rule in a manner prejudicial to defendant. We agree with those contentions.

"Assumption of risk is an affirmative defense. In the case at bar it was not made an issue either by the pleadings or the evidence. Therefore, it had no relation to the issues in the case and should not have been given. On the other hand, in its form and substance as given, it could have no other effect except to have confused and misled the jury by inducing the erroneous inference that defendant was an insurer against all risks of plaintiff's employment, regardless of their character or genesis. In effect, it was the equivalent of a direction for plaintiff." (27 N.W.2d at 925, 926)

In Siciliano v. Denver & Rio Grande Western R. Co., 12 Utah 2d 183, 364 P.2d 413, in reversing a judgment for plaintiff the court said:

"As to the contention that it was prejudicial error to instruct the jury as to

assumption of risk, we agree. No issue was raised by defendant's pleading on that score, and there was no evidence that remotely could have suggested that assuming the risk would have prevented recovery here. . . ." (12 Utah 2d at 185, 364 P.2d at 414)

■ Plaintiff says that defendant argued assumption of risk by making the following statement in argument:

"MR. STABLER: Have you ever heard of a basketball player, Lance Stallworth, I believe, from Nebraska? He had a heart attack, he came back to be a great basketball player."

Nothing appears in the record to show the context in which the statement was made. Without more, the statement as quoted above provides no reasonable basis for concluding that defendant injected assumption of risk into the trial of the case.

The above quotation from argument is the only part of the record quoted in plaintiff's brief to support the proposition that assumption of risk was injected into the case by defendant. Plaintiff cites the page numbers of twelve pages of the transcript and says that defendant "interjected" at least eleven references to assumption of risk in examination and argument. Nothing on the twelve pages suggests a reference to assumption of risk.

■ If plaintiff's Charge 3 instructs the jury as to the effect of any proposition stated in the charge upon any issue, .that issue is whether plaintiff's intestate assumed the risks of his employment. The issue whether plaintiff's intestate assumed said risks is not one of the issues on trial. This court has said:

"A charge which merely states an abstract proposition of law without instructing the jury as to its effect upon the issues in the case on trial may be refused without error. Moore v. Cooke, 264 Ala. 97, 84 So.2d 748; Frith v. Studdard, 267 Ala. 315, 101 So.2d 305. Moreover, the charge was misleading in

that it might be understood as charging assumption of risk. The act specifically deprives the common carrier of that defense where the carrier has been negligent. 45 U.S.C.A. § 54." Birmingham Southern Railroad Co. v. Ball, 271 Ala. 563, 567, 126 So.2d 206, 209.

Refusal of plaintiff's Charge 3 was not error and Assignment 4 is not sustained.

*Part 2.*

Assignment of error No. 2 recites:

"2. The trial court erred in refusing the plaintiff's written Charge 1.

" 'Plaintiff's Requested Charge No. 1

" 'You are instructed that under the Federal Employers' Liability Act the employer shall be liable for damages to any employee suffering injury or death if the employer's negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' (R-7)"

Plaintiff says at page 23 of brief:

"The charge which the trial court refused in the instant case was copied directly from *Rogers* (352 U.S. 500 [77 S.Ct. 443, 1 L.Ed.2d 493]) and from a number of Alabama cases. . . ." (Par. Added)

Careful examination of the cited cases does not reveal any case from which Charge 1 is "copied directly." The most that can be said is that the charge appears to be an attempt to paraphrase a statement in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, at page 506, 77 S.Ct. 443, at page 448, 1 L.Ed.2d 493, which recites as follows:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence,

the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. . . ."

In *Rogers*, a jury in a trial court awarded damages to a plaintiff employee in an action against the railroad under the Federal Employers Liability Act. The Supreme Court of Missouri reversed on the ground that the evidence did not support the verdict. The United States Supreme Court held that the evidence was sufficient to support the verdict for the plaintiff and reversed the judgment of the Missouri Supreme Court. The United States Supreme Court pointed out that the test of a jury case is whether the proofs justify with reason a finding that employer negligence played any part, even the slightest, in producing employee's injury. The Supreme Court recognized that in such cases the jury might also, with reason, on grounds of probability, attribute the resulting injury to causes other than defendant's negligence. The court in *Rogers* considered when an FELA case should be submitted to the jury, but did not consider how the court should instruct the jury in such cases. Idzojtic v. Pennsylvania Railroad Co., 3 Cir., 431 F.2d 1029, 1034; Ely v. Reading Co., 3 Cir., 424 F.2d 758, 762.

"Neither Coray v. Southern Pacific Co., (335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208), nor Rogers v. Missouri Pacific Ry. Co., strongly relied on by plaintiff-appellant herein, involved instructions concerning the causation required to establish legal liability of a railroad under the F.E.L.A. Both cases dealt with evidentiary situations." (Par. Added) Funseth v. Great Northern Railway Co., 9 Cir., 399 F.2d 918, 921.

■ Plaintiff's Charge 1 in the instant case is certainly not copied directly from *Rogers*. The statement in the opinion in *Rogers* sets out the test of a jury case. *Rogers* holds that when the evidence may with reason support a finding that defendant's negligence played any part in producing the injury, and may also with reason support a finding to the contrary, the jury must be permitted to make the choice between the two findings.

■ Charge 1 makes the test of a jury case a test of liability. The charge completely ignores the possibility that the jury may have the option to make a contrary finding. The charge tends to say that something the law permits the jury to do is something the law requires the jury to do. In this tendency the charge is misleading. The charge completely ignores the defense of plaintiff's contributory negligence which is an issue in the instant case.

In Bertrand v. Southern Pacific Co., 9 Cir., 282 F.2d 569, a case brought under the Federal Safety Appliance Act and FELA, the trial court refused plaintiff's requested charge which recites:

"'Under this act of Congress, the test of liability of the railroad carrier [that is, the defendant, Southern Pacific] is simply whether the proofs justify with reason the conclusion that the employer's negligence [in this case the failure to furnish an efficient hand brake] played any part, even in the slightest, in producing the injury for which damages are sought. It does not matter that from the evidence the jury may also with reason on grounds of probability attribute the result to other causes including the employee's contributory negligence.'" (282 F.2d at 572)

In *Bertrand*, the Ninth Circuit held that the trial court did not err in refusing the above quoted charge. Among other things the court said:

"The proposed instruction paraphrases in part language to be found in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. The court in that case, however, was not speaking of 'the test of liability of the railroad carrier' (the language used in the proposed instruction) but 'the test of a jury case.' If the proofs justify with

reason the conclusion that employer negligence played any part, 'even the slightest,' in producing the injury or death, then the issue of causal relation must go to the jury. The Supreme Court was here using the word 'proofs' to mean 'evidence.' But the fact that the proofs or evidence justify with reason a finding of causal relation does not mean that the jury is required to make such a finding.

"The proposed instruction is faulty because it bound the jury to find what it was entitled to find but was not required to find. . . ." (282 F.2d at 572, 573)

Plaintiff cites Parker v. Atchison, Topeka and Santa Fe Ry. Co., Cal.App., 68 Cal.Rptr. 362, to support Assignment 2. In *Parker,* the California Court of Appeals held that the trial court erred in refusing the following instruction to the jury on the causation issue, to wit:

". . . 'An injury is proximately caused by an act or omission whenever it appears that the act or omission played any part, no matter how small, in actually bringing about or causing the injury. So if you find from the evidence that any negligence on the part of the defendant contributed in any way or manner, even in the slightest degree, toward any injury suffered by plaintiff, *you may find* that injury was proximately caused by defendant's act or omission.' . . ." (Emphasis Supplied) (68 Cal.Rptr. at 363)

It is readily apparent that the refused charge in *Parker* is not comparable to plaintiff's Charge 1 in the instant case where it is said that the employer "shall be liable."

In *Parker,* the Court of Appeals held also that the trial court erred in giving "the standard proximate cause instruction applicable to common law negligence actions." The court said further that causation in an FELA case exists even if there is a plurality of causes, including the negligence of defendant or of a third person, and that the negligence of the employer need not be the sole cause of the ensuing injury.

Plaintiff cites also Page v. St. Louis Southwestern Ry. Co., 5 Cir., 312 F.2d 84, in which the court held that it was error to give a traditional proximate cause instruction without indicating to the jury that the negligence of the railroad need not be the sole or the whole cause of the resulting injury.

In the instant case, a substantial portion of the court's oral charge is hereinafter set out, a reading of which will indicate that the court in the instant case did indicate to the jury that defendant's negligence need not be the sole cause of the injury.

In Funseth v. Great Northern Ry. Co., supra, the court made the following comment on *Parker* and *Page,* to wit:

"The instructions in *Parker,* however, like the instructions in *Page,* are not comparable with the instructions given in our pending case. In both *Page* and *Parker* the trial judge gave the traditional proximate cause instruction. . . . In neither case, however, did the trial judge add anything to adequately convey the meaning of causation as articulated by *Rogers* to the effect that the negligence of the railroad need not be the sole cause or the whole cause of injury." (399 F.2d at 923)

Plaintiff cites DeLima v. Trinidad Corporation, 302 F.2d 585, in which the Second Circuit held that a requested charge should have been given. The court said:

". . . Plaintiff requested the court to charge that if the employer's negligence 'played any part, even the slightest, in producing an injury to plaintiff, the *plaintiff may recover.* * * *' The Court, however, gave the traditional common law instruction that 'Proximate cause is that cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces

the result complained of, and without which it would not have occurred.' . . ." (Emphasis Supplied) (302 F. 2d at 587, 588)

The difference between the instruction in *DeLima* that "the plaintiff may recover," and Charge 1 in the instant case that "the employer shall be liable" is readily apparent.

Plaintiff cites L. & N. R. Co. v. Cooke, 267 Ala. 424, 103 So.2d 791, where this court held in an FELA case that, under *Rogers* and other authorities cited, the trial court did not err in refusing the affirmative charge for defendant or in overruling defendant's motion for new trial. No other charge to the jury is discussed.

In Southern Ry. Co. v. Reeder, 281 Ala. 458, 204 So.2d 808, also cited by plaintiff, this court held that a jury question was presented and the trial court did not err in refusing the affirmative charge for defendant with hypothesis or in refusing two other charges requested by defendant which charges are not in anywise similar to plaintiff's Charge 1 in the instant case.

In Boeing Co. v. Shipman, 5 Cir., 411 F. 2d 365, cited by plaintiff, plaintiff sued under the common law and the Alabama Employers Liability Act. The court considered the test of the sufficiency of the evidence in federal cases and the test to be applied in FELA and non-FELA cases. No charge similar to the instant Charge 1 is considered.

In Shepherd v. Southern Ry. Co., 288 Ala. 50, 256 So.2d 883, the court held that a motion for new trial was erroneously granted and reversed. Several refused charges are mentioned in the opinion. It does not appear that any of the refused charges were similar to plaintiff's Charge 1 in the instant case.

On the considerations above set out and authorities cited, we are of opinion that plaintiff's Charge 1 was refused without error and that Assignment 2 is not sustained.

*Part 3.*

*Assignments 24, 25, 26, 28 and 29.*

Plaintiff assigns for error that the trial court erred in charging the jury in five statements which are set out and italicized in the excerpts from the court's oral charge which follow:

"Now, in order for you to determine and pass upon, as to whether or not the plaintiff has sustained the burden of proof, as I will define it for you, then it becomes my duty, and I will read to you at this time the complaint. This complaint does contain legal terminology, and I will define that terminology for you as we go along. The plaintiff's complaint reads as follows: . . ."

At this point, the court read the complaint to the jury and continued to charge as set out in the next quotation. The number of the respective assignments are shown in parentheses, as (24), (25), etc., immediately preceding the statement excepted to.

"Now, the first response, of course, to this complaint is the not guilty plea, general issue, if you will, and then when you put these two papers head to head, then the law says that the burden of proof is upon the plaintiff, Mrs. Mary Salotti, as the administratrix, to reasonably satisfy the jury as to the truth of the material averments of her complaint.

"Suffice it is to say that I think the counsel, and subject to their correction, have agreed and stated to you in stipulations that, I am sure, that not all of the elements of this complaint are in issue. I think there is no doubt about that. For example, that Mr. Salotti worked for the railroad company, and that he was engaged in the furtherance of interstate commerce. And all of these things, in essence, and if I am in error counsel can object to what I am telling the jury at this time, what it boils down to is that the controverted issues are that the plaintiff charges the defendant with negligence; secondly, it says

that as a proximate consequence of that negligence, in whole or in part, that the plaintiff was injured in and about his person; that he died.

"So, those then are the three material averments of this complaint. Negligence is characterized as carelessness, if you will, but the complaint says it in several different aspects, and I will read that to you again. The plaintiff says that the defendant was guilty of negligence by reason of failing, or negligently failing to provide Joseph Salotti with a reasonable and safe place to work, or failing or negligently failing ot (sic) provide a sufficient and adequate number of employees to do said work, or negligently assigning the deceased to work under conditions that were too dangerous in view of his physical condition.

"Now, negligence is a relative term, ladies and gentlemen of the jury panel. Negligence is strictly the failure to exercise due care. And when I use the word person, I am also speaking of a corporation, because a corporation can only act through live humans, so when I use the word person you could also use the same terminology in respect to a corporation. Then, a person or a corporation is negligent if he does that which a reasonable and prudent person would not ordinarily have done under the same or similar circumstances; or, a person or corporation is also negligent if he does that, fails to do that which a reasonable and prudent person would have done under the same or similar circumstances.

"(24) *Negligence, possibly if you were sitting around on the front porch, or back porch, or wherever you like to talk to your neighbors, you would probably be using the word carelessness.* (25) It is a relative term. *You have to look at all of the surrounding circumstances, and then ask yourself the question, did the defendant, under knowledge of all of the existing circumstances, the intent of the parties,* what they proposed to do, the age of the plaintiff, his job category, and what was proposed to be done on this job, did they do something, that is to say, the defendant, that a reasonable and prudent operator of the railroad would not have done, or failed to do something that a reasonable and prudent operator of the railroad would have done under those existing circumstances and conditions. That is a factual matter for you ladies and gentlemen to resolve, and I cannot help you with that decision.

"Now, the second material averment of this complaint is that the plaintiff says that as the proximate consequence of the defendant's negligence that her husband suffered the fatal injury, proximate causation, if you will. And I will define that term for you as follows: All negligence is not actionable, that is to say, it cannot be made the basis of a right of recovery. In order for the negligence of the defendant to be made the basis of a recovery for the plaintiff in this case, such negligence must be the proximate cause, in whole or in part, of the injury and damages claimed. Negligence which is merely a condition that has nothing to do with the injuries and damages is not actionable. If it is merely a contemporaneous event, an isolated event, is not coupled or in any way connected to the damages, then it is not actionable, and does not constitute a basis for a cause of action. In order for the negligence of the defendant to be actionable the injury must follow the negligence in natural and probable sequence, unbroken by any independent intervening efficient cause, so that but for the negligence complained of the injury would not have occurred. (26) *I would say that probably a layman's definition of proximate causation would mean the direct cause.*

"Now, the third material averment of the plaintiff's complaint is, of course, that because of the negligence, and as a direct or proximate consequence, in whole or in part, that the plaintiff's husband died.

"Those then are the three material averments of the plaintiff's complaint. Now,

going back, if I may say so, the Federal Employer's Liability Act put the duty on the employer of the railroad company to use ordinary care to provide the plaintiff with a reasonably safe place in which to do the work. They are not insurors or guarantors of his safety, and only have to do that which is reasonable.

"The second part of the Federal Employer's Liability Act, under which the plaintiff claims, right to recover damages in this action, provides in part: Every common carrier by railroad, while engaging in commerce between any of the several states, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

"Also, I would like to call to your attention, and read for your consideration, a portion of Section Three of that act, and it reads as follows: In all actions brought against any common carrier by railroad to recover damages for personal injuries to any employee, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.

"Now, taking that up in consideration with the second, or special defense of the railroad, the contributory negligence plea, and by what this plea means, and although it is not in long written form, it says this: The railroad says in answer to the complaint of the plaintiff, Mrs. Salotti, as administratrix, that Mr. Salotti, being a competent railroad employee, and engaging in the work in which he was engaged at the time, and with all of the knowledge and facts of which surrounded his job, and of his physical condition, and the job he was about to do, or proposed to do, that he was under a duty to exercise reasonable care for his own safety, and that he failed

in this. In other words, the plaintiff is charged with contributory negligence.

"Now, this plea is an affirmative plea, and therefore the law says that the burden of proof is upon the defendant to reasonably satisfy the jury as to the truth of the material averments of this plea. So, what does this plea, in essence, say? It says this: First of all, the defendant charges the plaintiff with contributory negligence, that, again, proximately caused or contributed to cause his own injuries and damages, in short, his death.

"In looking at this contributory negligence plea, you would use the same definition of negligence that I have previously given to you, and I will restate it simply, if I may. The defendant says that Mr. Salotti, under those conditions and under those surrounding circumstances, and whatever has been related to you in this testimony of which he would have been aware of at that time, did something that a reasonable and careful and prudent employee would not have done, or that he failed to do something that a reasonable and prudent and careful employee would have done.

"(28) *Now, again I say to you that you could use the word carelessness, if that is your pleasure, in view of his conduct.* Then, the plea goes on to say that his negligence or carelessness either directly caused or contributed to cause his own injuries and death. (29) *You would use the same definition of proximate cause that I have given heretofore, but again, I would say to you, use the direct approach, if you will, and just say the direct cause of his death.*

"Now, what I have attempted to do here, as far as this point is concerned, and I never know because I can't look into the juror's minds and determine your resolution of the factual issues, if I could my job would be much easier, but up to this point, what I have tried to do is give you three options, and let me restate those for you at this time: First of all, if, after a full and

fair consideration of all of the evidence in this case, if the plaintiff has not sustained the burden of proof regarding the three material averments of her complaint, naturally, then, her cause of action would fail, and your deliberation would stop at that point. The second option is this: That, if after a full and fair consideration of all of the evidence, if you are reasonably satisfied (sic) that the plaintiff has sustained the burden of proof, but you are further reasonably satisfied that the defendant has proven the contributory negligence plea, then, of course, in that event, in your deliberations you would come to the question of damages to be awarded. This complaint simply seeks for and asks for damages that we call in law compensatory damages, by way of reference. There are two types, compensatory and punitive, and you are not concerned with punitive damages in this case. The purpose of awarding compensatory damages in any case is to compensate the party for such injuries and damages of the kind and character as complained in the complaint of which you are reasonably satisfied that they did in fact sustain.

"Now, damages arising in the future have to be reduced to its present cash value, but before it gets to that, the attorneys have commented, and I want to refer to your determination of compensatory damages, in the event that you find for the plaintiff, first of all, and then if you find for the plaintiff, and are reasonably satisfied that the defendant has sustained the contributory negligence plea, I also have some further instructions on this. To determine the pecuniary loss suffered by each survivor, that is, the widow and minor child in this case as a result of the death of Mr. Joseph Salotti, the decedent (sic), you should consider what benefits of pecuniary value, including money, goods, and services that the evidence shows that the decedent (sic), Mr. Salotti, customarily contributed to each survivor (sic). You should also consider what the decedent (sic), Mr. Salotti, was earning, and what he was likely to earn in the future in view of his earning capacity, habits of the industry, and thrift, his health, age, and his life expectancy at the time of death. You should also take into consideration the personal expenses of Mr. Salotti, the decedent (sic), and other deductions from his earnings; consider also how long each surviror (sic) would have been likely to receive pecuniary benefits from the decedent (sic) if he had lived. Consider also all other facts shown by all of the evidence which would aid you in determining what pecuniary benefits, if any, it might be reasonably be expected each survivor would have received from the decedent (sic) if the decedent (sic) had not met his death.

"One of the survivors in this case is a minor child of the decedent (sic). As to that minor child, you may take into consideration an amount to compensate the child for the pecuniary loss or value of any loss of care, attention, instruction, training and advice and guidance from the decedent (sic) which would have been reasonably expected to have been given by him to his child during her minority, if the decedent (sic) had continued to live. The contributions and benefits which you may consider must be only those contributions and benefits upon which a monetary value can be made. You are not permitted to award any amount for grief, or loss of society, or companionship caused to the survivors by the death of the plaintiff's intestate, Mr. Joseph Salotti. Considering any damage which may arise in the future, of course, those, if you find for the plaintiff, would have to be reduced to present cash value. Present cash value means the sum of money needed now, which, when added to what sum of money that he may reasonably have expected to earn in the future, will equal an amount of damages at the time in the future when the damage from the injury will be suffered.

"Now, I have told you and read to you that the contributory negligence plea advanced by the defendant in this case is an affirmative plea, and if proven to your reasonable satisfaction would result in

comparative negligence. Sometimes it is difficult for jurors to follow, particularly those of you that have served on other automobile cases in Alabama, which we do not recognize comparative negligence, and then you come and try an FELA case, which the law says comparative negligence is the way to look at this. But, at the risk of being repetitious, let me say that if you find for the plaintiff, and you have also been reasonably satisfied that the defendants have sustained the contributory negligence plea, and proper procedure to be followed by this jury in comparing the negligence of the parties, and returning a verdict in favor of the plaintiff in a reduced amount based on that comparison is, determine the full amount of all damages sustained by the plaintiff as the proximate consequence of the conduct of the defendant; next, compare the negligence or fault of the parties by determining in what proportion, figured in percentage, the plaintiff's own fault contributed as a proximate cause of his own injuries and damages; then, reduce the full amount of the plaintiff's damages claimed by subtracting a sum equal to the percentage of the total that you find to your reasonable satisfaction, from all of the evidence in the case, was caused by the plaintiff's husband, the decedent (sic), contributory negligence, and return a verdict in favor of the plaintiff for the amount remaining. That's a long way of getting around to it, but what I have tried to do is this, and by way of illustration only. For example, if you should find that the defendant was guilty of 80 percent negligence and the plaintiff 20 percent, or, in the alternative, if you find the plaintiff guilty of 80 percent and the defendant guilty of 20 percent, then you would adjust your award by reducing the plaintiff's claim in the amount that you find that he, the decedent (sic), Mr. Salotti, was guilty of contributory negligence. I don't know how else to state it to you, but that's by way of illustration only. I am not saying what your decision should be. That's not my job, and the fact that I have talked about money and damages does not

mean that I think the plaintiff is entitled to recover, because I don't have to decide this case. But, I do have to give you the overall picture of it, and that's all I am attempting to do."

In those portions of the charge included in Assignments 24, 25, and 28, the word "carelessness" appears. Plaintiff contends that the court erred in using the word "carelessness" to describe negligence.

This court has said:

"The objection taken to the fourth and fifth counts, and urged in argument, is that they do not state a cause of action, because the act of defendant's servant who is charged with having superintendence was characterized as being 'carelessly or negligently' done. It is said that the use of the word 'carelessly' disjunctively with the word 'negligently' is a fatal defect, thereby rendering the counts so entirely vicious as that they do not state a cause of action. There is no merit in this contention. These two words are synonymous of each other. 1 Words and Phrases, p. 974." Mascot Coal Co. v. Garrett, 156 Ala. 290, 296, 297, 47 So. 149, 151.

In Words and Phrases, Carelessness, Permanent Edition, Vol. 6, page 258, the following statements appear:

" 'Carelessness' and 'negligence' are synonymous terms. Folds v. City Council of Augusta, 151 S.E. 685, 40 Ga.App. 827.

" 'Carelessness' is synonymous with ordinary negligence. State v. Meany, 115 N.W.2d 247, 257, 262 Minn. 491.

"The words 'negligence' and 'carelessness' are synonymous in meaning. State v. Jones, 126 A.2d 273, 275, 152 Me. 188.

" . . .

"The terms 'carelessness' and 'negligence,' in law, are synonyms. Bindbeutal v. Street Ry. Co., 43 Mo.App. 463, 470.

" . . .

" 'Carelessness' means lack of ordinary care; that is, lack of such care as a man of ordinary care would exercise under the particular circumstances of the case. Lago v. Walsh, 74 N.W. 212, 214, 98 Wis. 348."

■ Immediately preceding the language excepted to in Assignment 24, the court charged to effect that negligence consists in doing that which a reasonable and prudent person would not do, or, in failing to do that which a reasonable and prudent person would do, under the same or similar circumstances. The same definition of negligence is repeated immediately preceding the language excepted to in Assignment 28. In the light of the authorities cited and the definition of negligence stated, it does not appear that the court erred in using the word "carelessness." Assignments 24, 25, and 28 are not sustained.

■ In support of Assignments 26 and 29 plaintiff argues that the court's instruction concerning proximate cause is the classic common law definition in a common law tort case and not the definition of proximate cause in an FELA case.

On rehearing in Parker v. Atchison, Topeka and Santa Fe Railway Co., 263 Cal. App.2d 675, 70 Cal.Rptr. 8, 12, the court said:

"We do not say that in all F.E.L.A. cases a common law causation instruction is necessarily reversible error. Repeated instructions correctly stating the rule of the *Rogers* case may render harmless the error in giving a common law proximate cause instruction. . . ."

In the case at bar, in at least four instances the trial court instructed the jury with respect to plaintiff's right to recover if the alleged injury to plaintiff's intestate resulted "in whole or in part" from defendant's negligence. The court charged:

On transcript page 392, that plaintiff avers that her husband was injured

" . . . as a result of, in whole or in part, of the negligence of the agents, servants or employees of the defendant . . . "

On transcript page 396, that in order for the negligence of defendant to be made the basis of recovery for plaintiff, " . . . such negligence must be the proximate cause, in whole or in part, of the injury and damages claimed."

Again on transcript pages 396 and 397, that the third material averment of the plaintiff's complaint is that because of the negligence, and as a direct or proximate consequence, "in whole or in part," plaintiff's husband died.

On transcript page 397, the court quoted the statute, under which plaintiff claims, which provides that every common carrier engaging in interstate commerce shall be liable in damages to any person suffering injury while employed by such carrier, for such injury resulting "in whole or in part" from the negligence of the officers, agents, or employees of the carrier.

On transcript page 404, the court charged in detail that if the jury should find that defendant was guilty of 80% negligence and plaintiff 20%, or, if plaintiff was guilty of 80% and defendant guilty of 20%, then the jury would adjust their award by reducing plaintiff's claim in the amount that decedent was guilty of contributory negligence.

In Tyree v. New York Central Railroad Co., 382 F.2d 524, the Sixth Circuit considered an appeal remarkably similar to the instant appeal. In *Tyree*, plaintiff, on appeal from judgment for defendant, complained that the trial court had erred in its oral charge and in refusing a charge requested by plaintiff. The Sixth Circuit held that the trial court had not committed reversible error. Among other things, the court said:

"At the close of the evidence in the instant case, appellant's counsel submitted to the trial court the following special request to charge, which has come to be known as

the Mathes and Devitt Instruction and which was discussed by Judge Edwards in Morrison v. New York Central Railroad Company, 6 Cir., 361 F.2d 319:

" 'An injury or damage is proximately caused by an act, or failure to act, whenever it appears, from a preponderance of the evidence in the case, that the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage. So, if you should find, from the evidence in the case, that any negligence of the defendant contributed, in any way or manner, toward any injury or damage suffered by the plaintiff, you may find that such injury or damage was proximately caused by the defendant's act or omission.'

"The district court did not give the requested charge.

"However, in its charge to the jury, the court commenced its instructions by saying:

" 'Now to get into another section of the Federal Employers' Liability Act. And that is Title 45 Section 51 and it reads:

" ' "Every common carrier by railroad while engaging in [interstate] commerce, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, * * * or other equipment." ' " (Emphasis supplied.)

"Considered as a statement of law, the foregoing could not be subject to complaint inasmuch as it specifically told the jury exactly what the statute provided: that the Railroad would be liable in damages to an employee suffering injury *resulting in*

*whole or in part* from the negligence of any of the officers, agents, or employees of the Railroad. The court then stated to the jury:

" 'Now when we get to the discussion of the second cause of action we have three questions for your consideration. First, whether the defendant, that is the railroad company, was negligent as claimed by the plaintiff in his Complaint; second, whether such negligence, if any, either in whole or in part proximately caused the injuries of which plaintiff complains; third, was the plaintiff himself guilty of negligence or any act of negligence which is termed contributory negligence which is the sole cause of injuries or which directly and proximately contributed thereto in any degree; * * *.'

"All of the charge up to this point is clearly correct.

"The chief complaint of appellant is that the court, during its charge, stated to the jury the following:

" 'Proximate cause—and I told you this definition, too, applies to the first cause of action—proximate cause of the injury is that which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which it would not occur. In simpler terms, it is the direct and counterdistinction from the remote cause of any injury. Proximate cause does not necessarily mean the cause nearest in point of time or in point of distance but it does mean that cause without which the injury would not have occurred.'

"The foregoing is the language embodying the traditional concept of proximate causation, rather than the language of causation which appears in the Federal Employers' Liability Act, in which it is stated that the employer is liable if the injury results in whole or in part from its negligence.

18

"Whatever may be said about the foregoing statement of the trial court as tending to be foreign to the simpler test set forth in Rogers v. Missouri Pacific R. Co., supra, we must consider the whole of the court's charge to ascertain whether the court misled the jury into applying the traditional common law standard of proximate cause, instead of the statutory standard of legal causation established by Congress in cases coming under the Federal Employers' Liability Act in which the employee is entitled to recover if employer negligence played any part, even the slightest, in producing the injury.

"Judge Martin, in speaking for this court, said in Spaeth v. United States, 232 F.2d 776, 777, C.A. 6, 'that a reviewing court should not pick out one erroneous paragraph of a long charge and reverse upon it, if, upon consideration of the entire charge, it appears that the jurors were correctly instructed as to the applicable law in such manner as to leave no confusion in their minds.'

" . . .

"In keeping with the foregoing enunciations of the rule, and more particularly applicable to the instant case, is the following statement from 53 Am.Jur.—Trial—Section 838: 'Applying the rule as to cure of erroneous instructions by other instructions, it has been held that an instruction likely to mislead the jury may be cured by others covering the same point in a clear and concise manner, and that an instruction which, taken by itself, is ambiguous and in one view erroneous will be cured by another qualifying it if it is apparent that the jury could not have been misled thereby. Thus, it has been declared, where a court at the conclusion of a charge returns to a subject considered earlier and gives additional instructions in regard to it, that the jury may naturally regard them, so far as they may state a new and different rule, to be intended to qualify as a last word what has been previously said, and will be presumed to have accepted them as controlling.'

"It is, then, to be said that in addition to those portions of the charge, which we have heretofore mentioned as indubitably proper, the court in a further discussion of causation of accidents to railroad employees, instructed the jury as follows:

" 'When a railroad employee's injuries are *caused in whole or in part* by the fault of others performing operational activities of its employer, such others are agents of the employer within the meaning of Section I of the Federal Employers' Act.' (Emphasis supplied.)

"The court further stated in discussing proximate cause in the instant case:

" 'If you find by a preponderance of the evidence, considering all the facts and circumstances in this case as shown by the evidence the defendant failed to fulfill its duty to exercise reasonable care to furnish plaintiff a safe place of work and that such failure proximately contributed *in whole or in part* to cause plaintiff's injuries then your verdict is for the plaintiff.' (Emphasis supplied.)

"The court then instructed that 'if the employee's negligence concurred with the railroad's negligence proximately causing the injury, the employee is still entitled to recover a verdict. * * * If you find that the plaintiff and the defendant were guilty of negligence and the negligence of both proximately contributed to bring about the injury sustained by the plaintiff, you will compare the negligence of the plaintiff and the negligence of the defendant and the amount of recovery should be diminished in proportion to the amount of negligence contributable [attributable] to the plaintiff.'

"In seeking further to clarify the subject for the jury, the trial court then gave an illustration to show the damages to which a plaintiff might be entitled even though he were guilty of contributory negligence.

" . . .

"Assuming as erroneous the court's instruction to the jury, on a single occasion

as previously mentioned, in language embodying the traditional concept of proximate causation, whereas the applicable standard in this case is that prescribed by the Federal Employers' Liability Act, in which the employee is entitled to recover if employer negligence played any part, even the slightest, in causing the injury, nevertheless, the court's repeated instructions on proximate cause which fully complied with the statute, comprising, among others, its opening statement, quoting the statute, and its concluding observation, and final instruction on causation, emphasizing that if the defendant's negligence, in whole or in part, caused the accident, plaintiff would be entitled to recover, constrain us to conclude that the error complained of was harmless; that it was cured by all of the other instructions that complied with the statute; and that the court's prior statement of the traditional common law standard of proximate cause did not constitute reversible error.

"It should be mentioned that, at the conclusion of the proofs, appellant excepted to the failure of the trial court to give the requested instruction, heretofore mentioned, in which the court was asked to charge the jury that 'if you should find, from the evidence, in this case, that any negligence of the defendant contributed, in any way or manner, toward any injury or damage suffered by the plaintiff, you may find that such injury was proximately caused by the defendant's act or omission.'

"The trial judge disregarded this request and exception on the ground, apparently, that he had already charged the jury to this effect in his prior instructions, embodying the same rule in somewhat different language; and we agree with such conclusion." (382 F.2d at 526, 527, 528, 529)

Consideration of the authorities mentioned above and the entire oral charge in the instant case leads to the conclusion that the oral charge did not constitute reversi-

ble error and that Assignments 26 and 29 are not sustained.

*Part 4.*

Plaintiff assigns as error the ruling of the trial court sustaining defendant's objection to the introduction in evidence of plaintiff's Exhibits 6 and 7.

Parts of the exhibits appear to be copies of the records of North Carolina Memorial Hospital in Chapel Hill, N. C., which were made beginning April 27, 1970. Plaintiff's intestate was discharged from the hospital May 8, 1970.

A part of the exhibits appears to be copies of papers bearing the name of plaintiff's intestate and the name of Richmond Memorial Hospital at Rockingham, N. C. The entries appear to relate to matters which occurred during a period beginning February 12, 1968, and ending February 26, 1968.

Plaintiff contends that the exhibits were admissible in evidence under Title 7, § 415, Code Recompiled 1958. One witness, Dr. Hood, who had treated plaintiff's intestate at North Carolina Memorial Hospital, testified that Exhibit 6 "appears to be a Xeroxed copy of the true record" of the record of plaintiff's intestate at North Carolina Memorial Hospital. Plaintiff offered in evidence "the total record of Mr. Salotti."

The foregoing is all the evidence relied on as being a sufficient predicate to authenticate the exhibits. No authenticating evidence whatever was offered with respect to the records of Richmond Memorial Hospital.

It appears to be recognized by the parties that a hospital record of a patient, when relevant, is admissible in evidence when it is shown that the record was made in conformity with Title 7, § 415 " . . . to the extent that the matter recorded is incident to hospital treatment of the patient but not otherwise." Law of Evidence

in Alabama, McElroy, 2nd Ed., Vol. 2, page 257, Section 254.01(9).

"Information appearing in such records which is furnished by outsiders is inadmissible. See McElroy, supra." Anderson v. State, 35 Ala.App. 111, 118, 44 So.2d 266.

Plaintiff cites the following statement from McElroy, to wit:

"Testimony by any witness (frequently, in practice, the custodian of the record) that the document now exhibited to him is a record of the business; that he knows the method (i. e., the standard operating procedure) used in the business, of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable; is a sufficient authentication of the record to require its admittance in evidence. Mahone v. Birmingham Elec Co., 261 Ala. 132, 73 So.2d 378, 380; Mitchell v. City of Mobile, 244 Ala. 442, 447, 13 So.2d 664; Bailey v. Tennessee Coal Iron & R. Co., 261 Ala. 526, 75 So.2d 117." Law of Evidence in Alabama, McElroy, supra, page 255, Section 254.01(4).

■ The authentication of plaintiff's Exhibits 6 and 7 falls short of the requirements set out in the authorities cited above.

Plaintiff says: " . . . Since both plaintiff and defendant needed part of that record not sent by the hospital, it was agreed that both sides could offer evidence from counsels' files to fill in the needed material. . . . "

Plaintiff refers to pages 111 and 112 of the transcript where a colloquy between court and counsel occurred during the reading of the deposition of Dr. Craige.

Defendant says there was no mention made of any records from any hospital other than North Carolina Memorial at the taking of Dr. Craige's deposition or in his testimony. The record appears to support defendant's statement.

In reply brief, plaintiff says:

"Appellant in response to Appellee's answer to these Assignments of Error reaffirms its (sic) position with regard to the error of the trial court in its failure to admit into evidence plaintiff's Exhibits 6 and 7. It is manifest from the Record that tremendous confusion accompanied both plaintiff's and defendant's attempts to introduce hospital records into evidence. No one seemed exactly sure what constituted what record and the Appellant now contends as in the original brief that Appellant did everything possible to authenticate the records in question and that the trial court erred in refusing their admission."

■ § 415 relaxes the requirement that the maker of a record must have personal knowledge of the truth of the entry, but the statute does not make all records admissible in evidence without proper authentication or predicate. § 415 requires, (1) that it be shown that the entry was made as a memorandum or record of an act, transaction, occurrence, or event; (2) that the entry was made in the regular course of a business; and (3) that it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter.

The record in the instant case fails to show that proper predicate was laid or that the trial court erred in sustaining objection to plaintiff's Exhibits 6 and 7.

*Part 5.*

In Assignment 20, plaintiff assigns as error the ruling sustaining defendant's objection to the introduction in evidence of part of the deposition of Dr. Davolos.

The deposition was taken May 2, 1973, in Cincinnati, Ohio. The trial began June 19, 1973.

Dr. Davolos testified that he practiced in Cincinnati and that his practice is more than eighty per cent cardiology and vascular disease.

He testified that he had examined certain hospital records of plaintiff's intestate, namely: North Carolina Memorial Hospital, the death certificate, and the records of Richmond Memorial Hospital "dated 2–12–68"; but he never treated plaintiff's intestate.

Dr. Davolos testified as an expert, not as an attending physician.

A part of the deposition was read, pages 1 to 8. Defendant at this point objected to the remainder of the deposition. The remainder of the deposition consists of hypothetical questions. Defendant objected on the ground that the evidence on which the hypothetical questions are based is not before the court.

The jury retired and court and counsel engaged in a colloquy which covers fifteen pages of the transcript. The court referred to 31 Ala. Lawyer, p. 502, October 1970, saying among other things:

"... Further in the article, on Page 502, this statement appears: 'A hypothetical question must not submit to the expert the credibility of a witness who testified to a fact hypothesized or the credibility of a hearsay statement admitted into evidence, such as a hospital record.' Going on, 'any hypothetical question is bad if it assumes the credibility of another witness or another document as a fact hypothesized.' "

Plaintiff argued that under Title 7, § 437, the questions were admissible and that the defects in each of the questions are immaterial or were testified to by, or were in evidence by things other than what the court has raised.

The court sustained the objection saying that a non-attending expert can testify only through a hypothetical question which must conform to our rules of evidence.

Plaintiff argues ". . . that the actual objection interposed and in fact finally sustained was an objection to the form in which the hypothetical question and answer were worded"; that defendant did not, at the taking of the deposition, make the objection, and, therefore, under Title 7, § 474(16)(c)(2), the objection was waived by defendant and the trial court erred in sustaining the objection.

The first question in that part of the deposition to which objection was sustained begins as follows:

" 'Q Now, Doctor, I want you to assume a man born on May 10, 1906, who was sixty-four years of age at the time of his death. This man's name was Joseph Salotti. I want you to assume that on February 12, 1968, this man was admitted to the hospital suffering from severe upper epigastric pain, and that the hospital records indicate that he was placed on absolute bed rest and given medication for the relief of pain, discomfort and tension, and that an EKG was reported as showing a posterior myocardial infarction.

"Assume that on discharge from the hospital on February 26, 1968, this man was instructed to return to the doctor's office at ten-day intervals, was given medication to take in the event that the pain returned, and was instructed to remain at absolute rest at home other than for bathroom privileges and going to the table to eat.

" '. . .' "

■ Defendant's objection is that the hypothetical question is based on facts not in evidence. If, at the taking of the deposition, defendant had known, or was chargeable with knowledge, that the hospital records of Richmond Memorial Hospi-

tal would not be introduced at the trial and that the question was based on facts that would not be in evidence, then it might be argued that defendant had waived the right to object on the ground that the questions were based on facts not in evidence. The facts are, however, that the trial did not occur until seven weeks after the taking of the deposition. Dr. Davolos testified that he had examined the Richmond Memorial Records. At the taking of the deposition defendant had no notice that the hypothetical question would not be based on evidence introduced at the trial. To say that defendant, at the taking of the deposition, waived the right to object would require defendant to anticipate and assume seven weeks prior to the trial that evidence would not be introduced, which would be unreasonable and unjust.

■ If not objectionable otherwise, the question assumed facts not in evidence, that in 1968, the illness was diagnosed and the patient suffered the pain and symptoms and was given the treatment and instructions hypothesized.

"The rule prevails here that hypothetical questions should not contain elements of fact not shown by the evidence. Prudential Insurance Co. v. Calvin, 227 Ala. 146, 148 So. 837; S. H. Kress & Co. v. Barratt, 226 Ala. 455, 147 So. 386; Zimmern v. Standard Motor Car Co., 205 Ala. 580, 88 So. 743." Southern Ry. Co. v. Simmons, 237 Ala. 246, 248, 186 So. 566, 568.

See cases cited in Vol. 9, Alabama Digest, Evidence ☞553(4).

■ It is apparent from the record that the trial court was of opinion that the excluded portion of the deposition was not admissible because the hypothetical questions to Dr. Davolos called for an opinion based on the opinion of others. The trial court said:

"... And it is my opinion ... that the offered opinion of an expert is not admissible if in terms it includes assumed facts found by another expert, which witness correctly testified to a specific specified opinion. . . . Going on, 'any hypothetical question is bad if it assumes the credibility of another witness or another document as a fact hypothesized.' "

The page numbers mentioned by the court are reference to The Alabama Lawyer, Vol. 31, No. 4, of October, 1970.

The principle mentioned by the court is discussed in 98 A.L.R. 1109. The case annotated is Mt. Royal Cab Co. v. Dolan, 168 Md. 633, 179 A. 54, 98 A.L.R. 1106, where the court said:

"Several witnesses were produced by the plaintiff, among them Dr. Sheehan, a professor in the Medical School of Yale University, and a brother-in-law of Mr. Dolan. Throughout his testimony Dr. Sheehan expressed numerous opinions, inferences, and conclusions pertaining to the injuries of the appellee, and their effect upon him, all of which were based upon his examination, observation, and professional knowledge. Other witnesses also expressed their opinions and conclusions concerning these injuries and their effect, based upon observation and contact with the plaintiff. With this general situation in regard to the testimony given by both expert and lay witnesses, Dr. Levy was called as an expert, and asked the following question:

" 'Now, Dr., based upon that testimony you have either heard or have just had read to you, and assuming that it is all true, will you state to the jury what in your opinion is the cause of the condition that you have found to exist in this patient, the plaintiff, Mr. Dolan, at the time you examined him on September 22nd last?'

". . .

"It has been consistently held by this court that the opinion of an expert, however qualified to speak, cannot be predi-

cated, either in whole or in part, upon the opinions, inferences, and conclusions of others, whether such opinions, inferences, and conclusions be expressed by expert or lay witnesses. It is true that a witness who is qualified as an expert, who has heard the entire testimony in the case, and who assumes the truth of it all, may base his opinion upon such testimony, where not conflicting, except that the opinions of others may not be incorporated in the question or taken into account in giving his answer, each of which was erroneously done, as shown in both the questions and answers, which is the basis of this exception.

"  .  .  .

"In the case of Quimby v. Greenhawk, 166 Md. 335, 340, 171 A. 59, 61, this court, speaking through Judge Parke, in an extensive and exhaustive opinion, has completely reviewed the law and supporting cases in this state, and succinctly states these conclusions: 'Although a medical expert may base his opinion upon the facts testified to by another expert, the witness may not have submitted to him, as a part of the facts to be considered in the formation of his inference and conclusion, the opinion of such other expert on all or some of the facts to be considered by the witness from whom the answer is sought. To do so would destroy the premises of fact upon which an expert, by reason of his own peculiar technical skill and knowledge, is permitted to give in evidence his own inference and opinion.' (Citations Omitted)" (168 Md. at 634, 179 A. at 55, 98 A.L.R. at 1107, 1108)

One of the hypothetical questions propounded to Dr. Davolos concludes as follows:

"Now, Doctor, I want you to take into consideration the facts that I have given you, assuming that they are true and correct, take into consideration your review of the man's medical and hospital records which you have indicated that you have read and reviewed. Do you have an opinion, Doctor, with the reasonable degree of medical certainty, as to whether or not there is a causal connection between the man's death on September 17, 1970, and the work that he was performing at the time of his death?"

As stated above, Dr. Davolos testified that he had examined the hospital records of North Carolina Memorial Hospital, the death certificate, a letter from Dr. Hood, and Richmond Memorial Hospital records. Samples of statements in the hospital records are as follows:

"Mr. Salotti was discharged from the hospital on 5/8/70, after showing a very gratifying response to treatment of congestive heart failure."

"CHEST: Massive cardiomegaly is present. Associated with this is a moderate degree of right pleural effusion and pulmonary vascular congestion.

"F. Guinto, Jr., M.D./pdp"

"It was the feeling that this patient's murmur could represent papillary muscle dysfunction."

"There is no calcification of the aortic valve  .  .  ."

"MEDICAL STUDENT NOTE

"  .  .  .

"5/1/70 Cardiology

"History and physical exam reviewed. Findings suggest initial regurgitation. The reason for recent rather rapid deterioration in cardiac function is not clear.

·   ·   ·

"  .  .  .

"We agree that cardiac catherization is indicated.

"  .  .  .

"Cardiac cath is scheduled for Friday. I'm not convinced that this is the time for cath."

While the significance of the records quoted is not altogether clear to a layman, it is clear that conclusions and opinions are expressed in the hospital records.

In 98 A.L.R. it is said that:

"It is not permissible for a medical expert to express an opinion predicated on the testimony of other doctors, which contains much of fact and much of opinion. Com. v. Marshall (1926) 287 Pa. 512, 135 A. 301." (98 A.L.R. 1110)

"The opinions of other witnesses do not constitute a legitimate element of the basis of the opinion of an expert witness. Crozier v. Minneapolis Street R. Co. (1908) 106 Minn. 77, 118 N.W. 256.

". . .

"A medical expert cannot express an opinion based on the opinion of another expert. Foster v. Dickerson (1891) 64 Vt. 233, 24 A. 253 (dictum)." (98 A.L.R. 1111)

It appears that the hypothetical questions propounded to Dr. Davolos were based on assumed facts, some of which were not in evidence, and that the questions call for opinions based on the opinions of others.

Assignment 20 is not sustained.

Affirmed.

HARWOOD, BLOODWORTH, and McCALL, JJ., concur.

JONES, J., concurs in result.

JONES, Justice (concurring in the result).

In concurring in the result affirming the lower Court's judgment for defendant, I am constrained to comment on two aspects of the opinion.

First, I agree that the federal decisions have precluded our further consideration of the propriety of charging the jury affirmatively on the issue of assumption of risk, i. e., the giving of plaintiff's requested charge which included that portion of the F. E. L. A. which abolishes assumption of risk as a defense. As the opinion points out, Justice Frankfurter's admonition to the effect that this concept is too complicated for the jury to understand has resulted in a consistent line of decisions upholding the trial court's failure to give such charge where the issue is not injected by the defendant.

These holdings, in my opinion, reach the pinnacle of ridiculousness. Justice Frankfurter, with all his brilliance—founded on his academic rather than his practical background—drew his conclusion on a false premise: that a jury, in the absence of any instruction as to assumption of risk, would not apply—consciously or subconsciously—this doctrine in its consideration of the issue of liability. It is ironic indeed that, on the one hand, he would credit the jury with such sophistication as would permit it to understand that in the absence of such charge the jury would necessarily not consider assumption of risk as a legal defense; while on the other hand, he distrusts the jury's ability to understand the court's instructions dealing with the ramifications of this legal doctrine.

In establishing the elements necessary to constitute liability, Congress in drafting the F. E. L. A. saw fit to affirmatively eliminate assumption of risk as a defense; and this, undoubtedly, for the reason that this concept had become so thoroughly engrained in our tort system. Paradoxically, the federal decisions now hold that juries will understand that they are to eliminate the application of this doctrine in their deliberation of such cases without any instruction to this effect, while Congress made no such assumption as to the legal profession in its enactment of the F. E. L. A.

I realize that, as relates to the instant appeal, the foregoing is but an exercise in futility; and, yet, one can always hope

that reason and logic may ultimately prevail.

The second point deals with the use by an expert witness of other opinion evidence in the formulation of his expert testimony. In the context here applicable, I agree with the holding and the rationale of the opinion. I do not wish to be understood, however, as saying that in other contexts (e. g., referral by a treating physician to other doctors or medical technicians) every fact testified to by the expert witness must be independently proved as a predicate to such expert testimony.

This Court in State Realty Co. v. Ligon, 218 Ala. 541, 119 So. 672 (1929) held that a physician's testimony as to condition of his patient may be based in part on the findings of other physicians such as x-ray examinations, blood tests, and the professional reports of physicians and nurses. While this rule has been somewhat refined by Clark v. Hudson, 265 Ala. 630, 93 So. 2d 138 (1956) and Prince v. Lowe, 263 Ala. 410, 82 So.2d 606 (1955), it has not been overruled. See also Taylor v. Atlantic Coast Line R. Co., 232 Ala. 378, 168 So. 181 (1936).